581 A.2d 994

**MASTHOPE RAPIDS PROPERTY OWNERS COUNCIL, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**CS WATER & SEWER ASSOCIATES, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1990.

Decided Oct. 10, 1990.

438

John M. Quain, with him, Kenneth Zielonis, Tucker Arensberg, P.C., Harrisburg, for petitioner, Masthope Rapids Property Owners Council.

Robert P. Haynes, III, with him, Charles B. Zwally, Mette, Evans & Woodside, Harrisburg, for petitioner, CS Water & Sewer Associates.

Kevin J. Moody, Asst. Counsel, with him, Bohdan R. Pankiw, First Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

DOYLE, Judge.

This matter is before the Court en banc following our grant of CS Water and Sewer Associates' (CS Water) application for reargument in two consolidated appeals previously decided by a panel of this Court, *Masthope Rapids Property Owners Council v. Pennsylvania Public Utility Commission* (Nos. 955 and 1057 C.D.1989, filed January 12, 1990 slip opinion) (*Masthope I*). In *Masthope I*, CS Water and the Masthope Rapids Property Owners Council (Masthope) each filed two separate petitions for review of two

Public Utility Commission (Commission) orders. The first order, entered on April 25, 1989, permitted CS Water's proposed rates in a tariff supplement to become effective; in the second order, entered on April 27, 1989,[1] the Commission, on its own motion, instituted an investigation into the reasonableness of CS Water's existing rates. The Commission filed four separate motions to quash the petitions as interlocutory. We consolidated the four appeals and considered them with their corresponding motions to quash.

Following argument we held that the Commission's approval of CS Water's rate increase via the April 25 order was invalid under Section 1310 of the Public Utility Code (Code), 66 Pa.C.S. § 1310, as that Section was interpreted by our Supreme Court in *Joseph Horne Co. v. Pennsylvania Public Utility Commission*, 506 Pa. 475, 485 A.2d 1105 (1984), and that Masthope's and CS Water's appeal of that order was not subject to a motion to quash because the April 25 order was final. We therefore denied the Commission's motions to quash both petitions for review of the April 25 order and we remanded to the Commission for proceedings consistent with the Code as set forth in *Horne*.[2]

CS Water petitioned for reargument and contended that in *Masthope I* we had reached the merits of the petitions for review of the April 25 order when the only issue before us was the motions to quash. We granted reargument to allow CS Water to argue the merits of its position before the Court en banc, and because the Commission advised us that reargument would be appropriate. However, before we address the merits in this matter, we will review the relevant facts. Because the circumstances of this appeal are unchanged from the standpoint of our decision in

1. Masthope's petition for review of the April 25 and April 27 orders were docketed at 955 C.D.1989 and 956 C.D.1989 respectively. CS Water's petitions were docketed at 1057 C.D.1989 and 1056 C.D.1989.

2. Having thus decided, we concluded that the Commission's April 27 order was interlocutory and therefore granted the motions to quash both petitions for review of that order. That portion of our order in *Masthope I* is not here at issue, and we are thus concerned only with the April 25, 1989 order.

*Masthope I,* we will adopt the facts which we set forth in that decision as follows:

The genesis of this case lies with CS Water's May 2, 1988, filing with the Commission of a general rate increase request consisting of proposed Tariff Supplement No. 2 to become effective October 1, 1988 (Supplement No. 2). Supplement No. 2 contained proposed changes in rates calculated to produce $71,940, or 37%, in additional annual revenues alleged by CS Water to be necessary due to increased operating costs, including repayment of principal and interest due on a loan received pursuant to the Water Facilities Restoration Act (Water Act), 32 Pa.C.S. §§ 7501–7518.

On August 17, 1988, Masthope filed a complaint with the Commission by which it questioned the justness and reasonableness of the rates contained in Supplement No. 2, and by an opinion and order adopted September 29, 1988 (entered September 30, 1988), the Commission instituted an investigation on its own motion into the justness and reasonableness of that general rate increase request. The Commission's order meant that Supplement No. 2 would be suspended by operation of Section 1308(d) of the Code until May 1, 1989, or seven months from the October 1, 1988 date that the new tariff would otherwise have become effective.

On November 2, 1988, CS Water petitioned the Commission for permission to file, on less than sixty days' notice, proposed Tariff Supplement No. 3 to become effective on December 1, 1988 (Supplement No. 3). Supplement No. 3 contained a proposed "customer charge" calculated to produce $51,410, or 26.9%, in additional annual revenues for the exclusive purpose of recovering the annual principal and interest due on CS Water's Water Act loan. CS Water further agreed that if the petition were granted, any complaint filed against the new tariff within sixty days of the date of the petition would be treated by CS Water as if the petition had been filed upon sixty days' notice to the Commission and the complaint had been filed

within that sixty-day period. Following its petition, on November 8, 1988, CS Water filed a prehearing memorandum with respect to the Commission's investigation of Supplement No. 2, in which it asserted that its need for immediate rate relief prompted the November 2, 1988 petition, and that it would withdraw the general rate increase request contained in Supplement 2 if the Commission approved its petition for Supplement No. 3.

Masthope filed a complaint on November 30, 1988 and alleged that both CS Water's proposed charges in Supplement No. 3 and existing charges "are or may be unjust or unreasonable" in violation of the Code, Commission regulations and public policy. Thereafter, on December 9, 1988, CS Water filed a notice of withdrawal of proposed Supplement No. 2. On December 13, 1988, CS Water filed a motion to strike, or, in the alternative, an answer to Masthope's November 30, 1988 complaint, and asserted, *inter alia,* that Section 7518 of the Water Act, 32 Pa.C.S. § 7518, requires that the Commission provide expedited rate recovery of the annual repayment of principal and interest on the Water Act loan, and that Masthope's complaint should be stricken as no rate filing was pending before the Commission by virtue of CS Water's notice of withdrawal of proposed Supplement No. 2.

On December 14, 1988, Masthope filed a motion to dismiss, or, in the alternative, to suspend the general rate request contained in Supplement No. 3. This pleading challenged CS Water's representation in its November 2, 1988 petition that the exclusive purpose of proposed Supplement No. 3 was to recover the annual repayment costs of the Water Act loan. Masthope instead contended that the proposed tariff was "solely for the purpose of recovering the increased costs associated with a balloon payment" on the loan that financed CS Water's purchase of its water and sewer facilities from the prior owner, and asserted that CS Water's proposed tariff filing should be suspended for an investigation where Masthope could pursue all the issues attendant in a general rate increase

proceeding, *i.e.*, the justness and reasonableness of both existing and proposed rates.

Thereafter, following additional pleading by the parties, an Administrative Law Judge (ALJ) issued a recommended decision approving CS Water's withdrawal of its general rate increase request contained in Supplement No. 2. By order entered February 1, 1989, the Commission adopted the ALJ's recommended decision, thereby dismissing Masthope's complaint and terminating the Commission's investigation into Supplement No. 2.

No further activity occurred until, by opinion and order entered April 25, 1989, the Commission permitted the customer charge contained in Supplement No. 3 to become effective on April 26, 1989, subject to proceedings on Masthope's November 30, 1988 complaint. Nevertheless, by a separate opinion and order entered April 27, 1989, the Commission instituted an investigation on its own motion into the justness and reasonableness of CS Water's existing rates.

Slip. op at 1–5 (footnotes omitted).

On reargument, CS Water contends that it was denied expedited rate relief due to the procedure employed by the Commission which resulted in the April 25, 1989 order, that the Commission has failed to establish expedited procedures for approval of rate increase requests intended to repay Water Act loans as required by Section 7518 thereof, and that Section 1307 of the Code, 66 Pa.C.S. § 1307, should be utilized on remand to provide that expedited relief. Both the Commission and Masthope contend that CS Water was not denied expedited rate relief, or in the alternative, that CS Water was itself the cause of the delay. The Commission, however, now agrees with CS Water that Section 1307 of the Code provides the authority and procedure to enable it to provide the expedited relief required by Section 7518 of the Water Act, while Masthope contends that Section 1308 of the Code, 66 Pa.C.S. § 1308, provides the required expedited relief and due process protections.

Central to the parties' disagreement in this matter is the interrelationship between the Water Act[3] and the Code, an issue we have not previously had occasion to address directly. Therefore, we will turn first to this more general question prior to addressing the specific contentions of the parties.

When, in 1982, it passed the Water Act, the General Assembly made the following findings:

7503. Legislative findings and purposes [4]

The General Assembly finds and declares that:

(1) The health, safety and welfare of the citizens of this Commonwealth and the economic development, employment, agriculture, industry, environmental quality and government of the entire Commonwealth are and will continue to be vitally affected by the adequacy, safety and effectiveness of dam and reservoir, water supply, flood control and port facilities throughout this Commonwealth.

(2) Many community water supply systems, flood control facilities and port facilities have experienced severe difficulties complying with State and Federal health and safety standards and are not adequate to serve effectively the present and future needs of the people of this Commonwealth.

3. As noted *supra*, CS Water received the loan at issue in this case from the Water Facilities Loan Board pursuant to the Water Act. In 1988 the Water Act was partially repealed by the Pennsylvania Infrastructure Investment Authority Act (PENNVEST Act), Act of March 1, 1988, P.L. 82, 35 P.S. §§ 751.1–751.20. However, the Section of the Water Act at issue in this case, Section 7518, was not repealed by the PENNVEST Act, but was in fact incorporated without change into the PENNVEST Act by Section 20(a) thereof. As such, because it is Section 7518 of the Water Act which is under review herein, we refer only to the Water Act. We do note however that Section 15 of the PENNVEST Act transferred the rights, powers, duties, and obligations of the Water Facilities Loan Board to the Pennsylvania Infrastructure Investment Authority.

4. Section 7503 of the Water Act, 32 Pa.C.S. § 7503, was repealed by Section 20(a) of the PENNVEST Act, 35 P.S. § 751.20(a). Section 2 of the PENNVEST Act, 35 P.S. § 751.2, contains a similar declaration of legislative intent.

(3) Adequate financing of necessary repair, reconstruction, rehabilitation and improvement projects is not available at present through existing financial arrangements under terms and conditions which would enable the projects to be implemented.

(4) The Commonwealth should act to assist municipalities and the owners and operators of community water supply systems, flood control facilities and port facilities in the planning, financing and implementation of repair, construction, reconstruction, rehabilitation, extension and improvement projects.

(5) For these reasons and for this purpose, the voters of this Commonwealth approved by referendum on November 3, 1981 the incurring of indebtedness of $300,000,-000 through the sale of general obligation bonds by the Commonwealth for loans to provide for these projects.

As one means of effectuating these findings, the General Assembly also enacted Section 7518, titled "Expedited approval of rate relief." Section 7518 provides that:

*For the limited and special purpose of ensuring repayment of principal and interest on loans made pursuant to this chapter, the Public Utility Commission shall approve* such security issues, affiliated interest agreements and *rate increase requests by applicants that are regulated utilities as are necessary and appropriate.* For this purpose, the Public Utility Commission shall establish such expedited practices, procedures and policies as necessary to facilitate and accomplish repayment of the loans. *Nothing in this chapter shall be construed as to require approval of rate increases greater than that necessary to accomplish the repayment of loans made pursuant to this chapter.* (Emphasis added.)

In *Barasch v. Pennsylvania Public Utility Commission (Factoryville),* 127 Pa.Commonwealth Ct. 544, 562 A.2d 414 (1989), we held that the Commission's determination of whether a rate increase under Section 7518 is necessary or appropriate is governed by the provisions of the Code and

the fundamental principles of our public utility jurisprudence. The Code contains several different provisions through which public utilities may request a rate increase, which we now examine.

Public utilities may file for a general rate increase pursuant to Section 1308(d) of the Code, 66 Pa.C.S. § 1308(d). A general rate increase is defined therein as one which affects more than five percent of the public utility's customers and amounts to an increase in excess of three percent of the utility's total gross annual intrastate operating revenues. A general rate increase may be suspended for a maximum of seven months, after an initial sixty-day review by the Commission. Section 1308(d.1) of the Code, 66 Pa.C.S. § 1308(d.1), however, prohibits a public utility from filing multiple general rate requests with the Commission. Such multiple filings are referred to as "pancaking."

As is evident from the previous history of this matter, CS Water elected to follow Section 1308 procedures. On May 2, 1988, CS Water filed a general rate increase request with the Commission which consisted of proposed Tariff Supplement No. 2 to become effective on October 1, 1988. In violation of the anti-pancaking provisions of the Code noted *supra*, CS Water filed a second general rate request on November 2, 1988, consisting of proposed tariff Supplement No. 3.[5] In this second general rate increase request, CS Water petitioned the Commission for permission to file a proposed Supplement with an effective date of December 1, 1988. Tariff Supplement No. 3 was filed simultaneously with a petition requesting waiver of the sixty-day notice period prescribed by the Code. The Com-

---

5. We specifically held in *Masthope I* that Supplement No. 3 constituted a general rate increase in that the proposed "customer charge" which comprised Supplement No. 3 met all of the attributes of a general rate increase, as it affected more than five percent of CS Water's customers and the revenues generated were more than three percent of CS Water's annual gross intrastate operating revenues. In the absence of persuasive argument or authority to the contrary, we now reiterate our holding that the customer charge in Supplement No. 3 is indeed a general rate increase. Further, we note that there is nothing in either the Code or the Water Act which states that general rate filings do not include Water Act-related rate filings.

mission, however, could not act upon this petition and the proposed Supplement in light of the Code's prohibition against "pancaking" general rate filings. Therefore, CS Water's November 2, 1988 filing was *defective when filed* as it violated Section 1308(d.1) of the Code.

■ CS Water did, however, have another alternative. During the pendency of any rate proceeding, including a general rate proceeding, a public utility may seek extraordinary rate relief under Section 1308(e) of the Code, 66 Pa.C.S. § 1308(e). This procedure would have permitted CS Water to submit evidence regarding the necessity of the requested increase and would require an immediate hearing by the Commission. It likewise would have provided Masthope its due process rights and the proper review of the filing by the Commission. CS Water, however, chose not to invoke this procedure and the Commission has no authority to act *sua sponte* under this provision. *See Horne.*

■ In addition to Section 1308 of the Code, Section 1307 provides for an automatic sliding scale of rates. However, the automatic adjustment of public utility rates may only occur in certain limited instances. CS Water's November 2, 1988, filing does not fall within these limited circumstances for two reasons. First, CS Water's petition on its face is a request for general rate request as discussed above and, thus, falls under Section 1308(d) of the Code. More importantly, however, Section 1307 of the Code does not provide for the necessary and appropriate review required by Section 7518 *prior* to the implementation of the rate.

Section 1307 has been customarily employed, for example, as the statutory predicate for the implementation of electric cost rates by certain electric utilities, as discussed in *Allegheny Ludlum Steel Corp. v. Pennsylvania Pubic Utility Commission*, 67 Pa.Commonwealth Ct. 400, 447 A.2d 675 (1982), *aff'd*, 501 Pa. 71, 459 A.2d 1218 (1983), and is also employed for recovery of natural gas costs by natural gas utilities. Further, in all such proceedings the Commission's review is appropriately characterized as preliminary and

cursory. Indeed, the very function of the typical automatic adjustment clause is to permit rapid recovery of a specific, *identifiable* expense item, with a more comprehensive analysis upon reconciliation of actual costs with previously projected costs used to establish the effective rate. The initial process is essentially a mathematical review of the projections provided by the public utility. Therefore, there is no initial review to determine the appropriateness or necessity of the rate request. Again, this is inconsistent with the Water Act requirement of a review of the rate request to ensure it is for the limited purpose of recovering of Water Act loan monies.

■ Therefore, we conclude that the Commission applied the appropriate statutory provision, 66 Pa.C.S. § 1308(d), to its review of the second general rate filing. However, the Commission failed in two ways to heed the Supreme Court's holding in *Horne*. First, as discussed *supra*, the Commission established temporary rates while it continued its investigation of these rates. Second, it failed to accord Masthope its due process right to an evidentiary hearing prior to the implementation of these rates.

The Commission has certain obligations under the Water Act as set forth in Section 7518 thereof. CS Water contends that the language in that Section mandates that the Commission automatically approve rate increases whenever a filing is made allegedly to recover Water Act Loan principal and interest. Indeed, its argument could be interpreted to require the Commission to approve any rate increase filing whenever Water Act principal and interest is involved. We believe that this interpretation of Section 7518 is erroneous.

As stated *supra*, the Commission's authority to approve Water Act-related rate increases is guided not only by that Act, but also the Code. Specifically, the Water Act provides that only rate requests which are necessary and appropriate for recovery of Water Act Loan principal and interest are to be approved by the Commission. In addition, the Commission may only approve rate increases which are necessary

solely to accomplish the repayment of loans made pursuant to the Water Act. This statutory language envisions a Commission review of the applicable filing made by the public utility. Only after that review process is the Commission in a position to determine whether the rate increase is necessary and appropriate for Water Act loan purposes.

We believe that the following interpretation is consistent with the requirements of the Code. Specifically, under Section 1301 of the Code, 66 Pa.C.S. § 1301, the Commission is required to determine that every rate charged by a public utility is just and reasonable. In order to determine that a proposed rate is just and reasonable, the Commission must first engage in a review of any general rate increase requested by a public utility. This requirement is also contained in Section 7518 of the Water Act; only those requests which are necessary and appropriate for Water Act loan principal and interest recovery may be approved by the Commission. Moreover, this language does not permit the Commission to ignore the prescriptions and prohibitions of the Code when it reviews a Water Act-related filing. Therefore, in order to construe the provisions of the Code and the Water Act in a consistent manner, the Water Act requirements must be read in pari materia with the legal obligations of the Commission as mandated in the Code.

We note that the General Assembly could have easily inserted language in the Water Act which made it clear that it preempted the provisions of the Code. However, it did not do so. Indeed, as noted earlier, we have previously articulated this interpretation of the interrelationship between the Code and the Water Act in *Barasch (Factoryville)*. The question therein was whether facilities financed by a Water Act loan were used and useful in providing utility service for purposes of including the facilities in rate base. That the facilities constructed through the proceeds of the Water Act loan were not used and useful in the public service was not at issue. We therefore held that our Supreme Court's decision in *Barasch v. Pennsylvania Public Utility Commission*, 516 Pa. 142, 532 A.2d 325 (1987),

*aff'd. sub nom, Duquesne Light Company v. Barasch,* 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989), provided authority for the proposition that Water Act loan rate proceedings were still subject to the requirements of the Code. In overruling the Commission's decision that it was not required to apply the used and useful standard to Water Act loan rate requests (which the Commission argued would be contrary to the legislative mandate of that Act), we stated:

We do not agree. The plain language of Section 7518 requires only that the Commission approve such rate increases as are necessary and appropriate. That the General Assembly failed to indicate what factors should guide the Commission in determining whether a rate increase is necessary and appropriate does not commit to the Commission the unfettered discretion to make that determination. Rather, the Commission's determination is governed by the provisions of the Public Utility Code, 66 Pa.C.S. §§ 101–3315, and the fundamental principles of our public-utility jurisprudence.

Section 1301 of the Code, 66 Pa.C.S. § 1301, provides '[e]very rate ... shall be just and reasonable.' When attempting to set these 'just and reasonable' rates, the Commission is guided by general ratemaking principles, including the 'used and useful' principle. The Commission contends, however, that the General Assembly's failure to specify in Section 7518 of the Water Act that rate increases to ensure payment of Water Act Loans be granted subject to existing ratemaking principles constitutes the valid and express legislative authorization to grant such rate increases without regard to the used and useful principle. To the contrary, we believe that if the General Assembly had intended that the Commission grant rate increases to ensure payment of Water Act Loans *without* regard to existing ratemaking principles, it need merely have so stated in the Water Act. We refuse to read into the Water Act an abrogation of either the Public Utility Code or established ratemaking princi-

ples without the express legislative statement required by *Barasch.*

*Barasch (Factoryville),* 127 Pa.Commonwealth Ct. at 551, 562 A.2d at 418. (Emphasis in original.)

■ Accordingly, we conclude that the Commission's review procedures regarding a Water Act-related rate increase must comply with the mandate of the Code, and that such a determination can only result from a review of the filing to be certain that any rate approved is just and reasonable.

■ CS Water next contends that the Commission was required to institute expedited procedures for approval of Water Act-related rate increases and that the Commission failed to establish such procedures. However, based upon our review of the Code, as well as the Commission's regulations, we believe that these provisions allow for the expedited rate relief required by the Water Act. Nothing in the Code prevents the Commission from setting an immediate hearing upon the filing of a rate request, particularly when the public utility requests a waiver of the sixty-day notice requirement of Section 1308(a), 66 Pa.C.S. § 1308(a).

■ Even though CS Water filed a general rate increase before the Commission, Section 1308(d) does not require the Commission to utilize the full sixty-day review period provided therein. Nothing in this Section prohibits the Commission from immediately entering into a hearing upon the filing of a Water Act-related rate request.

Similarly, under a non-general rate increase, filed pursuant to Section 1308(b), 66 Pa.C.S. § 1308(b), the Commission is also permitted to enter immediately into a hearing on the requested rate relief. Therefore, it is quite clear that these provisions of the Code already enable expedited rate relief at the discretion of the Commission.[6]

6. In addition, as noted *supra,* Section 1308(e) of the Code permits extraordinary rate relief during the pendency of a general rate increase filing.

Further, we believe that the Commission did act in a fairly expeditious manner. As previously discussed, due to the two general rate filings made by CS Water on May 2, 1988, and November 2, 1988, the Commission was unable to act upon the second general rate increase filing, as the Code prohibits the filing of multiple general rate increases. Consequently, the mere filing of the November 2, 1988, general rate request was null and void. CS Water itself caused delay by placing the Commission in the position where it would be illegal to act on the November 2, 1988 general rate filing until CS Water withdrew its May 2, 1988 general rate filing and such withdrawal was granted by the Commission.

■ It was only upon the perfection of the withdrawal, in accordance with 52 Pa.Code § 5.94 that the Commission was free to initiate its review of the November 2, 1988 general rate filing. The Commission acted upon the November 2, 1988 filing on April 25, 1989, or approximately eighty-four days after February 1, 1989, when it first had authority to consider the second general rate request.

Accordingly, based on the foregoing, the April 25, 1989 order of the Commission is reversed, and this matter is remanded to the Commission for an expedited hearing pursuant to Section 1308 of the Code.

## ORDER

Now, October 10, 1990, the April 25, 1989 order of the Public Utility Commission in the above-captioned matter is reversed, and this matter is remanded to the Commission for proceedings in accordance with this opinion.

Jurisdiction relinquished.

PELLEGRINI, J., concurs in the result only.