665 A.2d 808

**Irwin A. POPOWSKY, Consumer Advocate**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Metropolitan Edison Company, Office of Small Business Advocate, International Brotherhood of Electrical Workers System Council U–9.**

**Appeal of METROPOLITAN EDISON COMPANY.**

Supreme Court of Pennsylvania.

Argued April 27, 1995.

Decided Sept. 19, 1995.

W. Edwin Ogden, Reading, for Met–Ed Co.

Craig R. Burgraff, and Mary C. Kenney, Harrisburg, for I. Poposwky.

Kevin J. Moody, Harrisburg, for PUC.

David M. Kleppinger, Harrisburg, for GPU Intervenors.

Karen Dill Moury, Harrisburg, for Small Business Advocate.

Charles T. Joyce, Philadelphia, for International Brotherhood of Electrical Workers.

John McN. Cramer, Philadelphia, amicus curiae for Pennsylvania Electric Association.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal by allowance from an order of the Commonwealth Court which reversed an order of the Pennsylvania Public Utility Commission (PUC) allowing the Metropolitan Edison Company (MetEd) to charge ratepayers for decommissioning * a nuclear generating facility known as Three Mile Island 2 (TMI–2).

TMI–2 was originally scheduled to provide service until 2014 but a serious accident forced the plant to close in 1979. At the time of the accident, the plant was a new one that had been in service for just three months.

The need to decommission TMI–2 did not arise from the 1979 accident. The obligation to decommission was, under federal law, imposed on MetEd as soon as the plant became radiologically contaminated, i.e., when the nuclear fuel was loaded. This event occurred well before the accident. Therefore, even if the accident had not occurred, the duty to decommission TMI–2 would still exist.

In April of 1993, the PUC, despite complaints filed by the Office of Consumer Advocate and others opposed to the rate increase, granted MetEd's request to charge ratepayers approximately $8.3 million per year for the cost for decommissioning TMI–2. The Commonwealth Court subsequently reversed. We, in turn, reverse.

---

* Decommissioning is the process whereby a nuclear generating facility is removed from service by reducing its residual radioactivity to a level that allows release of the property for unrestricted use.

 It is well settled that judicial review in PUC cases is limited to determining whether the PUC's findings and conclusions were supported by substantial evidence, whether there was an error of law, and whether there was a violation of constitutional rights. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 523 Pa. 370, 374, 567 A.2d 642, 643 (1989). Absent such an error, the PUC's decision must be affirmed. *Id.* Accord *Monessen Southwestern Railway Co. v. Pennsylvania Public Utility Commission,* 507 Pa. 586, 589–90, 493 A.2d 666, 668 (1985).

In reversing the PUC, the Commonwealth Court focused on a provision of the Public Utility Code that limits the extent to which ratepayers can be charged for "the cost of construction or expansion of a facility," 66 Pa.C.S. § 1315, and the principle that a utility company is entitled to charge ratepayers only for such of its property as is "used and useful" in the public service, *Barasch v. Pennsylvania Public Utility Commission,* 516 Pa. 142, 162, 532 A.2d 325, 334 (1987), aff'd, 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989).

As to these matters, the PUC stated:

> In regard to the argument ... that Section 1315 of the Public Utility Code, 66 Pa.C.S. § 1315, precludes the recovery of TMI–2 decommissioning costs, we note that the scope of that section pertains to "the cost of construction or expansion of a facility." Therefore, by its express terms, Section 1315 does not include the type of post-plant retirement, radioactive decontamination, safety and maintenance expenditures included within the Company's claim for decommissioning expense.

> With regard to the argument that the "used and useful" rule prohibits the recovery of these costs, we note here that while the TMI–2 facility is, and has remained out of service, and therefore, [is] not used and useful in the public service, that determination does not necessarily control the appropriate disposition of all cost items that may be associated with that facility given the Commission's overriding responsibility to balance the consumer and investor interest in the

establishment of just and reasonable rates. 66 Pa.C.S. § 1301.

■ We perceive no error in this rationale. Plainly, costs of decommissioning a nuclear reactor are not costs of constructing or expanding such a facility. In express terms, section 1315 protects ratepayers only from being charged for the costs of constructing and expanding facilities that have not yet been placed in service:

[T]he *cost of construction or expansion* of a facility undertaken by a public utility producing ... electricity *shall not be made a part of the rate base nor otherwise included in the rates* charged by the electric utility *until such time as the facility is used and useful* in service to the public.

66 Pa.C.S. § 1315 (emphasis added). The PUC properly concluded that this provision is inapplicable to the question of whether decommissioning costs, as opposed to construction and expansion costs, can be billed to ratepayers.

■ We now turn to the principle cited in *Barasch* that utilities are permitted to charge ratepayers only for property that is "used and useful" in the public service. *Barasch* held that, because canceled power plants were not used and useful in supplying electrical power, section 1315 prohibited recovering the costs of such plants from ratepayers, either by making the costs part of a rate base or by converting them to operating expenses through amortization. 516 Pa. at 158, 532 A.2d at 332. *Barasch* noted that excluding costs from the rate base while allowing their recovery as operating expenses would violate the requirement of section 1315 that costs of constructing facilities not used and useful must not be made part of the rate base "nor otherwise included in the rates charged by the electric utility." *Id.*

■ Inasmuch as *Barasch* involves an application of section 1315, it has only limited bearing on the present case, for, as heretofore discussed, section 1315 limits charges to ratepayers for the costs of construction and expansion of facilities but does not have application to the costs of removing facilities from service. It is argued, however, that *Barasch* contains

language that speaks beyond the confines of section 1315, to wit:

> Given what we have already said about the fundamental principles of this state's public-utility jurisprudence, it should be clear that no utility of any type is permitted, without express and valid legislative authorization, to *charge ratepayers for property which is not used and useful in the production of current utility service.*

516 Pa. at 169, 532 A.2d at 338 (emphasis added).

Nevertheless, to charge ratepayers for decommissioning costs is perfectly consistent with the cited language from *Barasch.* When ratepayers pay decommissioning costs, they are not reimbursing the utility for the cost of the power plant itself. Nor are they providing a rate of return on the utility's investment in the plant.

Any nuclear plant that has been removed from service, whether prematurely or at the end of its normal useful life, must be decommissioned. Decommissioning will always involve a reactor that is no longer used and useful in providing current electric service to customers. To argue that decommissioning costs cannot be charged to ratepayers because decommissioning involves property that is no longer used and useful is untenable, for such an approach would leave the utility with no means of recouping a legitimate cost of providing service to the public, to wit, the cost of removing from service equipment that is no longer useful. See generally *Penn Sheraton Hotel v. Pennsylvania Public Utility Commission,* 198 Pa.Super. 618, 623–29, 184 A.2d 324, 327–30 (1962) (costs incurred in removing utility's outmoded equipment can be charged to ratepayers). In short, decommissioning costs are legitimate operating expenses that a utility incurs in meeting its obligations under federal laws requiring the removal of radioactive contamination from abandoned reactors.

Operating expenses chargeable to ratepayers were recognized in *Barasch* as including costs of production, supply, and distribution. 516 Pa. at 166, 532 A.2d at 336–37. *Barasch* also stated:

> [W]ithout the benefit of a valid and otherwise applicable statute conferring a broader right, the only expenses which a public utility in this state may recover from ratepayers, through rates, are those expenses which represent the actual cost of providing *present* utility service.

516 Pa. at 166, 532 A.2d at 337 (emphasis in original). It is asserted that decommissioning expenses are not a cost of providing *present* utility service, and thus, that under *Barasch,* they cannot be charged to ratepayers. We do not agree. *Barasch* was not intended as a sweeping change in the law defining ratepayer liability for operating expenses of utilities. Rather, it was an application of 66 Pa.C.S. § 1315, holding that construction costs for canceled nuclear power plants could not be charged to ratepayers, regardless of whether the utility labeled the expenditures as construction costs or operating expenses.

Utilities have not been limited to charging ratepayers for only those expenses which directly and immediately supply commodities to their customers. See *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission,* 509 Pa. 324, 502 A.2d 130 (1985) (*Penelec* ), appeal dismissed, 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687 (1986); *Pittsburgh v. Pennsylvania Public Utility Commission,* 370 Pa. 305, 320– 21, 88 A.2d 59, 66–67 (1952); *Penn Sheraton Hotel,* supra. Clearly, the costs of providing present utility service are more encompassing. One such cost is that of maintaining compliance with federal laws governing removal of radioactive contamination.

In *Penelec,* supra, the PUC allowed a utility to charge ratepayers for certain operating expenses associated with property that was not used and useful in providing electric service, namely, the TMI–1 nuclear power plant which had been suspended from service as a result of the accident at TMI–2. The PUC allowed the utility to recover expenses of maintaining the plant for restart. We viewed this as reflecting a "balancing of consumer and investor interests." 509 Pa. at 334 n. 1, 502 A.2d at 136 n. 1. While the restart of TMI–1 was deemed by the PUC to be in the public interest, the costs

incurred to maintain the plant for restart were ones that, like those in the present case, did not involve facilities that were presently used and useful in providing electric service. *Penelec* was consistent with the longstanding rule that utilities are entitled to earn a reasonable rate of return on only such properties as are used and useful in the public service. Indeed, this Court expressly recognized that properties included in the rate base must meet the "used and useful" standard. 509 Pa. at 332–34, 502 A.2d at 135. Nevertheless, recovery of TMI–1 operating expenses was allowed.

While *Barasch* and *Penelec* bar a utility from earning an investment return on property that is not used and useful, and protect ratepayers from being charged for property that was never placed in service, neither prevents expenses related to properties that were previously in service from being charged to ratepayers where a balancing of consumer and investor interests makes it just and reasonable to do so. See 66 Pa.C.S. § 1301 (utility rates must be "just and reasonable"); *Penelec,* 509 Pa. at 329–30, 502 A.2d at 133 (PUC has duty to set "just and reasonable" rates, reflecting a balance of consumer and investor interests).

Here, in balancing the relevant interests, the PUC concluded:

[W]e have determined that while TMI–2 remains non-used and useful, and no return on the Company's investment in that facility will be allowed, the balancing of interests between consumers and investors as to decommissioning costs has led to the conclusion that these are necessary and reasonable costs unrelated to the accident at TMI–2 that can be fairly and legally included in the establishment of just and reasonable rates.

As to this conclusion, we perceive neither an error of law nor a lack of substantial supporting evidence. See *Peoples Natural Gas,* supra (standard of review).

In determining just and reasonable rates, the PUC has discretion to determine the proper balance between interests of ratepayers and utilities. *Pennsylvania Public Utility*

*Commission v. Philadelphia Electric Co.,* 522 Pa. 338, 342–43, 561 A.2d 1224, 1226 (1989). As this Court stated in *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.,* 492 Pa. 326, 337, 424 A.2d 1213, 1219 (1980), cert. denied, 454 U.S. 824, 102 S.Ct. 112, 70 L.Ed.2d 97 (1981),

> There is ample authority for the proposition that the power to fix "just and reasonable" rates imports a flexibility in the exercise of a complicated regulatory function by a specialized decision-making body and that the term "just and reasonable" was not intended to confine the ambit of regulatory discretion to an absolute or mathematical formulation but rather to confer upon the regulatory body the power to make and apply policy concerning the appropriate balance between prices charged to utility customers and returns on capital to utility investors consonant with constitutional protections applicable to both.

Further, the PUC is obliged to consider broad public interests in the rate-making process. *Penelec,* 509 Pa. at 331, 502 A.2d at 134.

By allowing MetEd to recover from ratepayers the cost of decommissioning TMI–2, the PUC acted within the bounds of its discretion. The PUC accommodated the public interest in seeing that radioactive contamination is removed from out-of-service nuclear power plants, and weighed the consumer interest in keeping rates low. It also recognized that MetEd is not permitted to receive a return on its investment in TMI–2, but took into account that the decommissioning costs are not the result of the accident at TMI–2. In short, the PUC validly exercised its discretion in conformity with the requirements of 66 P.S. § 1315 and *Barasch.* The decision of the Commonwealth Court to the contrary must, therefore, be reversed.

Order reversed.

MONTEMURO, J., is sitting by designation.