706 A.2d 1197

Irwin A. POPOWSKY, Consumer Advocate,

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 107.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 101.

PA CABLE TELEVISION ASS'N

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 108.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 102.

MCI TELECOMMUNICATIONS CORP.

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 109.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 103.

CENTRAL ATLANTIC PAYPHONE ASSOCIATION

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 110.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 104.

AT & T COMMUNICATIONS OF PENNSYLVANIA, INC.

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 111.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 105.

CITY OF PITTSBURGH

v.

PENNSYLVANIA PUBLIC UTILITY, Appellant at No. 112.

Appeal of BELL ATLANTIC-PENNSYLVANIA, INC. at No. 106.

Supreme Court of Pennsylvania.

Argued April 28, 1997.

Decided Dec. 24, 1997.

450

452

D. Michael Stroud, Julia A. Conover, Philadelphia, Eve Strauss West, Philadelphia, Kevin J. McKeon, Thomas J. Sniscak, Harrisburg, for Bell Atlantic-Pennsylvania, Inc.

Philip F. McClelland, Harrisburg, for Consumer Advocate.

Ashley Schannaur for City of Pittsburgh.

John McManus, Chairman, for Pennsylvania Legislative Com'n.

Susan Weinstock for Pennsylvania Legislative Com'n and AARP/Pennsylvania St. Legislative Committee.

Mark A. Keffer, Fairfax, VA, Daniel Clearfield, Harrisburg, for AT&T Communications.

David M. Kleppinger, Pamela C. Polacek, Harrisburg, for Pennsylvania Cable TV Assoc.

John A. Levin, John F. Povilaitis, Frank B. Wilmarth, Harrisburg, for PUC.

Susan Jin Davis, Harrisburg, Joan M. Campion, Washington, DC, for MCI Telecommunications.

Derrick P. Williamson, Harrisburg, John Sullivan, for appellees.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

Under a new telecommunications statute, Bell Atlantic Pennsylvania, Inc., filed a network modernization plan which proposed alternative regulation for noncompetitive services that featured a price cap formula for changing rates; classifi-

cation of six specific services as competitive and therefore subject to deregulation; and a commitment to substantial investment in Bell's telecommunications infrastructure. Following extensive hearings, the Pennsylvania Public Utility Commission (PUC) required major modifications to the plan, which Bell accepted. Parties opposed to Bell's petition and plan appealed, and the Commonwealth Court, 669 A.2d 1029, vacated in part, reversed in part, and affirmed in part. We granted allocatur due partly to the novelty and importance of issues arising under the new statute, as well as our concern that the Commonwealth Court might have exceeded its scope of review.

In July 1993, the Pennsylvania legislature enacted chapter 30 of the Public Utility Code, 66 Pa.C.S. §§ 3001–3009, titled "Alternative form of regulation of telecommunications services." Its purpose was to encourage the accelerated deployment of a state-of-the-art broadband[1] communications network which would be affordable and universally available. To induce local phone companies to commit to the considerable investment necessary to achieve such extensive modernization in the telecommunications infrastructure, the law permits the PUC to approve an alternative form of regulation other than the traditional rate base-rate of return regulation. A company may apply for an alternative form of regulation by filing a proposed network modernization implementation plan, wherein the company must commit to converting 100% of its interoffice and distribution network to broadband capability by the end of the year 2015. An implementation plan must also guarantee a reasonable deployment between rural, urban, and suburban areas, and must provide for deployment along public rights-of-way abutting public schools, industrial parks, and health care facilities. 66 Pa.C.S. § 3003(b).

---

1. 66 Pa.C.S. § 3002 defines "broadband" as a "communication channel using any technology and having a bandwidth equal to or greater than 1.544 megabits per second." A broadband channel is capable of simultaneous transmission of video and high speed data signals in addition to audio telephonic signals.

Among the criteria which must be met by a petition for alternative regulation is an assurance that rates for noncompetitive services will be just, reasonable, and not unduly discriminatory. The statute allows this criterion to be accomplished through the use of a "price stability mechanism." The law states that, subject to PUC approval, a price stability mechanism which allows total annual revenues from noncompetitive services to increase or decrease from the previous year's totals by the rate of inflation minus 2.25% "may meet the requirements of this section." 66 Pa.C.S. § 3004(d)(2).

The statute also allows local telephone companies, in conjunction with a petition for an alternative regulatory framework, to seek a PUC determination that any of its services is a "competitive service." Rates, tolls, charges, rate structures, rate base, rate of return, and earnings of competitive services may be completely deregulated. 66 Pa.C.S. § 3009(f). Notwithstanding deregulation, however, the PUC must establish regulations to prevent unfair competition and to require local telephone companies to offer their competitors reasonable nondiscriminatory access to all services and facilities necessary to provide competing service. 66 Pa.C.S. § 3005(b).

In October 1993, Bell filed a petition for an alternative regulatory framework, accompanied by a network modernization implementation plan and a proposal that certain services be deemed competitive. Three administrative law judges held evidentiary hearings and public input hearings.

The ALJs recommended that Bell's petition and plan be denied. They concluded that the price stability mechanism did not ensure that rates for noncompetitive services were just, reasonable, and nondiscriminatory; the modernization plan was not sufficiently detailed and did not adequately balance deployment between rural, urban, and suburban areas; and the services sought to be deregulated did not meet the definition of competitive services and the proposal did not provide adequate competitive safeguards.

The PUC did not adopt the ALJs' recommendations, but approved Bell's petition and plan with a number of modifica-

tions. First, in relation to Bell's proposal of a price stability mechanism of inflation minus 2.25%, the PUC set the formula at inflation minus 2.93% for ten years. Second, the PUC froze rates on protected services until the end of 1999, rather than the end of 1996 as proposed by Bell. Third, the PUC required the modernization plan to be modified to speed up deployment in suburban and rural areas. Finally, the PUC held that the six services proposed by Bell for deregulation were competitive. As to the competitive services, the PUC initiated proceedings to establish rules guaranteeing the competitive safeguards required by 66 Pa.C.S. § 3005(b). Pursuant to its options in 66 Pa.C.S. § 3004(b), Bell advised the PUC within thirty days that it would accept the modifications.

The state consumer advocate and various Bell competitors, who had challenged the petition and plan, appealed the PUC order. The Commonwealth Court vacated the part of the PUC's order which had set the inflation offset figure at 2.93%. The court remanded, ordering the PUC to calculate and include an "input price differential." [2] With regard to the PUC's classification of six services as competitive, the court held that the PUC failed to make required findings before deciding that the services were competitive and erred in determining that the services were competitive without first finding that the statutory competitive safeguards had been met. The court therefore reversed the PUC as to four of the services, concluding that the competitive safeguards were inadequate. As to the other two services, the court vacated and remanded for further proceedings to determine the adequacy of the competitive safeguards. In all other respects, the Commonwealth Court affirmed.

We granted allocatur to review the issues raised by Bell and the PUC. They may be summarized as follows. First, whether there was substantial evidence to support the price stability mechanism adopted by the PUC, that is, inflation minus 2.93%

---

**2.** An input price differential represents the alleged difference between price inputs (such as raw materials, manufactured goods, labor, etc.) in the telecommunications industry as opposed to price inputs in the U.S. economy as a whole.

with no input price differential. Second, whether the PUC correctly determined that services may be designated competitive before a determination is made that statutory safeguards have been met. Third, whether there was substantial evidence to support the PUC's finding that six of Bell's services are competitive.

A price stability mechanism is designed to calculate reasonable changes in rates for noncompetitive services, using a price change formula which starts with the general rate of inflation then adjusts for various factors. Bell proposed an offset of 2.25% as authorized in 66 Pa.C.S. § 3004(d)(2). Following evidentiary hearings, the PUC required Bell to limit rate increases to inflation minus 2.93%. The Commonwealth Court, however, required the PUC to include an additional element in the offset, the input price differential.

 The standard of review to be applied by the Commonwealth Court when reviewing the PUC is that the court should not substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the commission's expertise. The court itself has said:

> Our duty is to determine only whether or not the PUC's findings are supported by substantial evidence; we may not substitute our judgment for that of the PUC, nor may we "indulge in the processes of weighing evidence and resolving conflicting testimony." *Johnstown–Pittsburgh Express, Inc. v. Public Utility Commission*, 5 Pa.Commonwealth Ct. 521, 525, 291 A.2d 545, 547 (1972).

*Philadelphia Electric Co. v. Pennsylvania Public Utility Comm'n*, 61 Pa.Cmwlth. 325, 433 A.2d 620, 624 (1981), quoted in *Barasch v. Pennsylvania Public Utility Comm'n*, 507 Pa. 430, 490 A.2d 806, 809 (1985). The decision at issue, involving complex financial determinations and weighing and interpreting statistical and economic evidence, is within the PUC's area of expertise. *See Popowsky v. Pennsylvania Public Utility Comm'n*, 542 Pa. 99, 665 A.2d 808 (1995); *West Penn Power Co. v. Pennsylvania Public Utility Comm'n*, 147 Pa.Cmwlth. 6, 607 A.2d 1132 (1992).

The Commonwealth Court has alternatively expressed its standard of review in *West Penn Power Co. v. Pennsylvania Public Utility Comm'n,* 147 Pa.Cmwlth. 6, 607 A.2d 1132, 1135 (1992) (citations omitted):

> As long as there is a rational basis for the PUC's methodology [in establishing a rate structure], such decisions are left entirely up to the discretion of the PUC which, using its expertise, is the only one which can properly determine which method is the most accurate given the particular circumstances of the case and economic climate.
>
> It is well settled that the establishment of a rate structure ... is an administrative function peculiarly within the expertise of the PUC.

Reviewing the Commonwealth Court's judgment in the light of these standards, it appears that the court exceeded its scope of review and invaded the PUC's area of expertise and role as fact-finder.

■ The PUC decision to utilize a price cap formula which excluded an input price differential is supported by substantial evidence in the record. The state consumer advocate and Pennsylvania Cable Television Association, two challengers to the Bell petition and plan, claimed that the price of inputs for telecommunications companies did not increase as fast as the inputs in the economy across the board, and that the inflation offset should be increased in recognition of the differential. Nevertheless, Bell produced substantial evidence which supports the PUC's rejection of an input price differential in the price cap formula.

Briefly stated, the PUC observed that the consumer advocate and PCTA "estimate[d] widely divergent values" based on "similar data sources and timeframes" and therefore rejected their estimates as being unreliable. Bell's expert witness, on the other hand, testified credibly that a proper analysis showed no statistically significant difference between input prices for the telecommunications industry vis-à-vis the national economy.

It was proper for the PUC to determine the appropriate inflation offset to be included in Bell's price stability mechanism; it was also proper for the PUC, in making its financial and economic determinations, to disregard proposed incomplete adjustments, such as the input price differential, if the advocates fail to quantify their adjustments properly.

■ The Commonwealth Court's injection of an input price differential into the price stability mechanism appears to be based on a misreading of factual evidence in the record. The court relied on a PUC statement, in dictum, that it acknowledged that "the theory of using the input price differential in the price stability mechanism has merit." The court then stated:

> Being charged with the responsibility of ensuring that the rates under the price stability mechanism remain reasonable throughout the duration of Bell's Plan, the [PUC] cannot recognize the input price differential as affecting those rates and then refuse to ascertain the value to be assigned to that differential by stating that the evidence is insufficient to reach an appropriate figure or that the analytical measurements used to calculate the input price differential may be in need of future improvements. Instead, the [PUC] should have reviewed the evidence and fixed a value that best approximates the input price differential....

669 A.2d at 1041. The court noted that a Bell exhibit indicated an input price differential of 0.3%, so the PUC "acted arbitrarily in refusing to assign any value to the input price differential factor." *Id.* at 1041 n. 22.

It was erroneous to rely on the 0.3% figure, however, because it was from an exhibit in a different, unrelated case involving Illinois Bell; because it was for a different, earlier period of time; and because the exhibit later explained that "it is likely that the future differential will be small or nonexistent," R. 148a, and that "over the period 1948 to 1979, input prices for U.S. telephone companies grew at virtually the same rate as for the rest of the economy. This is what one would expect over any time period of substantial duration." R. 150a.

The court made an erroneous factual finding that Bell set a figure of 0.3% on its input price differential. The court took the figure out of context and ignored the conclusion of the exhibit: that for the period at issue, the input price differential would be small or nonexistent, i.e., approximately zero. While the PUC found merit to the theory of using an input price differential factor and incorporating such an estimate in the overall inflation offset value of a price stability mechanism formula, the PUC effectively assigned a value of zero to this factor under the record evidence in this case.

Despite substantial evidence supporting the PUC's determination of a price stability mechanism, the court substituted its judgment for that of the commission. Despite the deference due the PUC in a function peculiarly within its area of expertise, the court usurped the discretion of the commission. We conclude that the Commonwealth Court erred in vacating the price stability mechanism and remanding for recalculation including an input price differential.

The second and third issues are closely intertwined. They relate to the PUC's finding that six of Bell's services were competitive: directory advertising, billing and collection, centrex, paging, repeat call, and speed calling. The Commonwealth Court reversed the PUC on two grounds. First, the court held that the PUC violated a formal requirement by failing to include in its order a mechanical recitation, as to each of the six services, that it satisfied each of the eight criteria set forth in the statute. Second, the court held that the statute prohibited the PUC from classifying a service as competitive, even if it met the statutory criteria, unless the PUC first determined that the competitive safeguards of the statute had been met.

We will deal first with the question of whether the PUC correctly determined that services may be designated as being competitive before a determination is made that statutory safeguards are met. This, in essence, is a procedural determination requiring us to interpret the statute providing for alternative form of regulation of telecommunications companies.

The PUC held that the statute permitted, and logic demanded, that the designation of competitiveness be made before implementation of the competitive services safeguard requirements. R. at 1282a–83a. The Commonwealth Court disagreed and vacated or reversed the PUC's designation of six services as competitive prior to determining the adequacy of competitive safeguards. The court's reasoning focused on certain purposes of the statute set forth in 66 Pa.C.S. § 3001, viz., to ensure that customers pay only reasonable charges for local services and to ensure that rates for noncompetitive services do not subsidize competitive services. *Popowsky v. P.U.C.*, 669 A.2d at 1044. It quoted the requirement in 66 Pa.C.S. § 3004(d)(4) that the PUC must ensure that the granting of a petition for alternative form of regulation will not "unduly or unreasonably prejudice or disadvantage a customer class or providers of competitive services." These purposes and requirements would be contravened if the competitive safeguards were not in place prior to the designation of services as being competitive; a local telecommunications company could engage in unfair competition prior to establishment of competitive safeguards. The court agreed with the PUC that such unfair competition might be remedied in subsequent proceedings, but did not agree that such a remedy was sufficient because, in the court's view, a local telecommunications company could gain an unfair advantage over its competitors by engaging in unfair competition prior to the establishment of competitive safeguards. *Id.*

The Commonwealth Court erred in reversing or vacating the PUC's classifications of services as competitive without a prior determination that competitive safeguards are in place. The PUC applied sections 3005(a), (e), and (g) in classifying the six services as competitive. It reasoned that if competitive safeguards were to be a prerequisite to competitive classification, then section 3005(a) would have included the necessary language among the factors to be considered before a service could be classified as competitive. The legislature, however, did not explicitly require preexisting competitive safeguards. Instead, the legislature included specific lan-

guage requiring competitive safeguards in subsections (e) and (g) of the statute but excluded the concept from subsection (a) which sets forth the factors to be considered before the PUC classifies a service as competitive. Yet when "the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded." *Cherry v. Pennsylvania Higher Education Assistance Agency,* 153 Pa.Cmwlth. 210, 620 A.2d 687, 690–91 (1993), *aff'd* 537 Pa. 186, 642 A.2d 463 (1994). The PUC's interpretation of the statute also advances one of the most important ends of the statute, that is, *accelerated* deployment of a state-of-the-art telecommunications network. Many sections of the statute reveal the legislature's concern for expeditious implementation of modernized telecommunications technology. The PUC's procedure of classifying services prior to establishing competitive safeguards eliminated years of delay, which clearly furthered the legislature's policy of accelerated implementation of a network. We agree, therefore, that the establishment of competitive safeguards under 66 Pa.C.S. § 3005(e) and (g) is not a prerequisite to classification of a service as competitive under 66 Pa.C.S. § 3005(a).

 Moreover, the Commonwealth Court's holding exceeded its scope of review in a PUC case. We have stated:

The proper place to begin the appropriate inquiry is ... due deference to the views of the regulatory agency directly involved in administering the statute in question.... "[A]n administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and *will not be reversed unless clearly erroneous.*"

*Alpha Auto Sales v. Dep't of State,* 537 Pa. 353, 644 A.2d 153, 155 (1994)(emphasis added). The PUC's interpretation of 66 Pa.C.S. § 3005 is reasonable, is not clearly erroneous, and therefore should have been sustained. Judicial deference is even more necessary when the statutory scheme is technically complex, as it is in this case. *Graduate Health Systems, Inc. v. Pennsylvania Insurance Dep't,* 674 A.2d 367, 370 (Pa. Cmwlth.1996); *Nationwide Mutual Insurance Co. v. Foster,*

143 Pa.Cmwlth. 433, 599 A.2d 267, 270 (1991); *SmithKline Beckman Corp. v. Commonwealth,* 85 Pa.Cmwlth. 437, 458, 482 A.2d 1344, 1353 (1984). It was therefore erroneous to reverse the PUC's holding that implementation of competitive safeguards is not a prerequisite to classification of services as being competitive under section 3005(a).

 The final issue is whether there was substantial evidence to support the PUC's finding that six of Bell's services were competitive. In regard to the required statutory findings, the court quoted 66 Pa.C.S. § 3005(a)(1):

> (1) The commission shall make findings which, at a minimum, shall include evidence of ease of market entry, including the existence and impact of cross-subsidization, rights-of-way, pole attachments and unavoided costs; presence and viability of other competitors, including market shares; the ability of competitors to offer those services or other activities at competitive prices, terms and conditions; the availability of like or substitute services or other activities in the relevant geographic area; the effect, if any, on protected services; the overall impact of the proposed regulatory changes on the continued availability of existing services; whether the consumers of the service would receive an identifiable benefit from the provision of the service or other activity on a competitive basis; the degree of regulation necessary to prevent abuses or factors which are in the public interest. . . .

The court then stated: "The findings set forth in [66 Pa.C.S. § ] 3305(a)(1) are mandatory findings that must be made by the Commission prior to classifying services as competitive. Absent such findings, the Commission cannot grant [a local exchange telecommunications company]'s request for a determination that certain services are competitive." 669 A.2d at 1042. The court reversed the PUC because each of the eight specific findings was not made with regard to each of the six services prior to their classification as competitive. *Id.*

 We hold that the necessary findings were made. The Commonwealth Court raised the form of the findings to a preeminent level which it should not occupy. The purpose of

agency findings is to enable a court to review the questions on appeal. 66 Pa.C.S. § 703(e). The PUC decision met this standard.

The context of the PUC decision explains and justifies the form of the decision. In the proceedings before the ALJs, there was no contest as to some of the services Bell sought to classify as competitive, and certainly no contest as to each of the eight specific findings necessary for classification as competitive. The ALJs and the PUC, therefore, focused on the contested issues rather than giving equal consideration to all eight findings related to all six competitive services.

The PUC emphasis on the contested issues, however, does not mean that it did not make findings as to the other issues. It made the requisite findings under the standard of *Barasch v. Pennsylvania Public Utility Comm'n*, 101 Pa.Cmwlth. 76, 515 A.2d 651, 655 (1986), citing *UGI Corp. v. Pennsylvania Public Utility Comm'n*, 49 Pa.Cmwlth. 69, 410 A.2d 923 (1980):

> We have held that a Commission decision is adequate where, on each of the issues raised, the Commission was merely presented with a choice of actions, each fully developed in the record, and its choice on each issue amounted to an implicit acceptance of one party's thesis and rejection of the other party's contention.

Under this standard, the competing positions of the parties were fully explained in the record and the PUC adopted the position of Bell, implicitly accepting Bell's position with regard to each of the findings necessary to hold that each service was competitive.

Even without relying on the *Barasch* standard, the necessary findings were expressed by the PUC. It utilized the time-honored, useful, and noncontroversial technique of incorporating by reference findings made by the ALJs and adopting as its findings the detailed positions of particular parties. R. at 1278a, 1282a. The Commonwealth Court's holding that the PUC failed to make the required specific findings was, therefore, erroneous.

In summary, we reverse the order of the Commonwealth Court insofar as it vacated the PUC's price stability mechanism and remanded for recalculation including an input price differential. We also reverse the order of the Commonwealth Court insofar as it vacated the PUC's designation of six services as competitive and reinstate the PUC's order designating those services as competitive.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a concurring opinion which is joined by CASTILLE, J.

CAPPY, Justice, concurring:

I concur with the majority's decision. I write separately, however, in order to express my concern regarding the conclusion of the majority that the Commonwealth Court should not substitute its judgment for that of the PUC when *substantial evidence* supports the PUC's decision on a matter within the commission's expertise and in order to, once again, more particularly set forth the underlying requirements for scrutinizing matters such as these while utilizing a substantial evidence standard of review.

My Concurring and Dissenting Opinion in *Bowman v. Department of Environmental Resources*, 549 Pa. 65, 700 A.2d 427 (1997), which was joined by Mr. Justice Castille, explained that the Commonwealth Court's function, as a reviewing appellate court, does not end once the Commonwealth Court finds a single, substantive item of evidence that supports the commission's decision. The Commonwealth Court's review, pursuant to 2 Pa.C.S. § 704, is not limited to giving a "rubber stamp" affirmance of the tribunal below. Rather, the Commonwealth Court is required to review the *entire* record, including the evidence which was at the heart of the agency's decision. When the record *as a whole* contains substantial evidence which supports the commission's decision, the Commonwealth Court should affirm. *See Peak v. Commonwealth, Unemployment Compensation Board of Review*, 509 Pa. 267,

274, 501 A.2d 1383, 1387 (1985). In conducting its review of the record as a whole, and assessing whether substantial evidence to support the commission's decision exists, the Commonwealth Court is not compelled to affirm the agency decision simply because there is some evidence in the record which supports the commission's decision, especially in an instance where the commission did not address important countervailing evidence which was before it. In such a situation, the Commonwealth Court's remand of the matter to the commission to address the important countervailing evidence is necessary so that meaningful appellate review can occur. As I emphasized in *Bowman,*

> An agency opinion needs to contain sufficiently detailed findings of fact, together with a coherent legal discussion, so that the Commonwealth Court can perform a meaningful review. Any less would frustrate the legislative intent, in addition to providing agency panels with a means of nullifying the effect of legislation, because it would enable an agency to shield its decisions from review by drafting opinions in generalized and conclusory terms.

*Bowman,* 700 A.2d at 431.

In *Bowman,* because it was not apparent from the Commission's adjudication why particular evidence was significant, I stated my belief that a remand to the Civil Service Commission was appropriate.

In contrast, the PUC's adjudication in the case presently before us set forth the evidence from the record and the rationale relied upon by the commission in rendering its adjudication. I agree with the majority that the Commonwealth Court, in vacating the price stability mechanism and remanding for recalculation including an input price differential, improperly substituted its judgment for that of the commission. Moreover, I agree with the majority that the Commonwealth Court erred in reversing or vacating the PUC's classifications of services as competitive without a prior determination that competitive safeguards are in place. Finally, I agree that the Commonwealth Court's holding, that the PUC failed to make the required statutory findings for each of the

six services prior to their classification as competitive, was erroneous. As the majority states, the PUC made the necessary findings, by implicitly accepting Bell's position with regard to each of the services, and by incorporating by reference the findings made by the administrative law judges below and adopting as its findings the detailed position of particular parties. The problem raised in *Bowman*, regarding gaps in an adjudication preventing effective review, is not present here, since, as the majority points out, the necessary findings were made by the PUC to allow effective review.

I therefore respectfully concur with the majority opinion.

CASTILLE, J., joins this Concurring Opinion.