### UGI UTILITIES, INC.—GAS DIVISION, Petitioner

v.

### PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.

Decided Dec. 8, 2004.

David B. MacGregor, Philadelphia, for petitioner.

Shane Rooney, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

UGI Utilities, Inc.—Gas Division (UGI) petitions for review of an order of the Pennsylvania Public Utility Commission (the Commission), adopting, as modified, the recommended decision of an administrative law judge (ALJ). In his decision, the ALJ concluded that UGI was required to utilize the historic twelve-month period from April 1, 2002, to March 31, 2003, in calculating the rate of interest on over/under collection of annual purchase gas costs, thereby requiring UGI to return $607,017.00 to its ratepayers; that UGI was required to utilize a seven-month weighting factor in calculating the amount of interest owed; and that UGI cease and desist from making any interim rate adjustment filings. We now affirm.

This case involves the Commission's interpretation and application of Section 1307(f) of the Public Utility Code (the Code), 66 Pa.C.S. § 1307(f). Section 1307(f) establishes a procedure by which certain natural gas distribution companies may establish rates to recover their projected fuel costs, often referred to as purchased gas costs (PGC), from ratepayers. In order to recover these costs, the company must file a tariff with the Commission reflecting actual and projected increases or decreases in their natural gas costs.[1]  See

Section 1307(f)(1), 66 Pa.C.S. § 1307(f)(1). The Commission is thereafter required to conduct an investigation and hold a hearing, with notice, to review the filed tariff. See Section 1307(f)(2) of the Code, 66 Pa. C.S. § 1307(f)(2). Prior to the effective date of the filed tariff, the Commission will issue an order establishing the rate to be charged to reflect any changes in the PGC. Id.

Moreover, these Section 1307(f) rates are subject to after-the-fact reconciliation for over/under collection of projected gas costs. Section 1307(f)(3) requires each natural gas distribution company, within sixty days following the end of such twelve-month period as designated by the Commission, to file a statement specifying their total revenues, total natural gas costs, the difference between the aforementioned, why the differences occurred and how the natural gas costs are consistent with a least cost procurement policy as required by Section 1318 of the Code, 66 Pa.C.S. § 1318 (relating to determination of just and reasonable gas cost rates). 66 Pa.C.S. § 1307(f)(3). The Commission is required to hold a public hearing on the substance of such statement. Section 1307(f)(4) of the Code, 66 Pa.C.S. § 1307(f)(4). Thereafter, the Commission directs a natural gas distribution company to either refund any gas revenues to its ratepayers, with interest at the rate of 8%, or recover any excess gas costs from its ratepayers, with interest at the rate of 6%. See Section 1307(f)(5) of the Code, 66 Pa. C.S. § 1307(f)(5).

On June 2, 2003, UGI submitted its annual PGC filing and proposed tariff to the

---

1.  Further, Section 1307(f)(1) provides that the tariffs shall have an effective date six months from the date of filing. The Commission has promulgated regulations establishing the time and manner of requests for adjustments to

these rates. See 52 Pa.Code §§ 53.61–53.68. UGI normally files its tariffs on or about June 1 of each year, to be effective for a twelve-month period beginning the following December 1.

Commission. This filing contained both the required data for a review of UGI's actual PGC for the historic year, encompassing the twelve months ended March 31, 2003, as well as proposed modifications to UGI's prospective PGC rates to be effective December 1, 2003. Consistent with the Commission's regulations, UGI's proposed PGC rates contained two components: the C-factor, designed to recover projected costs for December 1, 2003, through November 30, 2004, and the E-factor, designed to reconcile over/under collections for the preceding PGC rate year, i.e., December 1, 2002, to November 30, 2003. In its filing, UGI estimated that it would be under-collected at November 30, 2003, thereby calculating interest at the prescribed 6% rate.

UGI's filing was then assigned to the ALJ for purposes of hearing and the issuance of a recommended decision. The Office of Consumer Advocate (OCA) filed a formal complaint, the Commission's Office of Trial Staff (OTS) entered an appearance and the Office of Small Business Advocate (OSBA) and the UGI Industrial Intervenors intervened without objection in UGI's PGC proceeding.[2] On July 15, 2003, OCA and OTS submitted written direct testimony. In the meantime, on July 30, 2003, UGI filed an interim PGC rate adjustment which lowered the then-existing PGC rate by 17% for the remaining four months of the PGC twelve-month period, i.e., from August 1, 2003, to November 30, 2003. On August 6, 2003, UGI informed the ALJ that a partial settlement had been reached

between UGI and OCA on all issues other than use of peaking service, which included the issues concerning the rate of interest on over/under collection of annual purchase gas costs and the seven-month weighting factor.[3]

Also on August 6, 2003, UGI submitted the rebuttal testimony of William J. McAllister concerning the aforementioned unresolved issues. On August 14, 2003, OCA and OTS submitted surrebuttal testimony of Andrew R. O'Donnell, which testimony included objections to UGI's July 30, 2003, interim filing. On August 18, 2003, UGI submitted written rejoinder testimony from Mr. McAllister. On August 19, 2003, the ALJ held a hearing at which the testimony discussed above was admitted into the record. At the hearing, UGI moved to strike the surrebuttal testimony of Mr. O'Donnell as it related to the July 30, 2003, interim filing on the basis that said testimony was beyond the scope of proper surrebuttal and that the interim filing was not properly part of the 2003 PGC proceedings. The ALJ deferred ruling on this issue and directed the parties to brief the same.

Approximately two months later, on October 15, 2003, the ALJ issued his recommended decision and order concluding that UGI was required to utilize the historic twelve-month period from April 1, 2002, to March 31, 2003, in calculating the rate of interest on over/under collection of annual purchase gas costs, thereby requiring UGI to return $607,017.00 to its ratepayers;

2. The Intervenors included a number of corporations, including Armstrong World Industries, Carpenter Technology Corporation, East Penn Manufacturing, Hershey Foods Corporation and Mount Joy Wire Company.

3. The broader issue of peaking service encompassed issues other than those addressed above. However, with respect to these other issues, the ALJ and the Commission ruled in

favor of UGI. OCA did file a petition for review with respect to Commission's decision on these issues. By order dated February 17, 2004, OCA's petition for review was consolidated with the present petition for review filed on behalf of UGI. However, on June 10, 2004, OCA filed a praecipe for discontinuance.

that UGI was required to utilize a seven-month weighting factor in calculating the amount of interest owed; and that UGI must cease and desist from making any interim rate adjustment filings. UGI, OCA and OTS thereafter filed exceptions to the ALJ's recommended decision and order with the Commission. On November 24, 2003, the Commission entered an opinion and order essentially adopting the ALJ's recommended decision and order. UGI thereafter filed a petition for review with this Court.

On appeal,[4] UGI first argues that the Commission erred in concluding that the calculation of the rate of interest on over/under collections of PGC must be based on historic year data. We disagree.

Section 315 of the Code, 66 Pa.C.S. § 315, addresses the burden of proof applicable in public utility rate cases. Section 315(a) of the Code specifically addresses such burden in relation to the reasonableness of rates, providing as follows:

> In any proceeding upon the motion of the commission, involving any proposed or existing rate of any public utility, or in any proceedings upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility. The commission shall give to the hearing and decision of any such proceeding preference

over all other proceedings, and decide the same as speedily as possible.

66 Pa.C.S. § 315(a). Applying this Section here results in the placement of the burden on UGI to establish that its proposed interest calculation methodology was consistent with the Code, especially Section 1307(f), and its corresponding regulations.

As noted above, Section 1307(f) of the Code addresses the recovery of natural gas costs. Section 1307(f)(1) of the Code directs that certain natural gas distribution companies, i.e., those companies with gross intrastate annual operating revenues in excess of $40,000,000, "may file tariffs reflecting actual and projected increases or decreases in their natural gas costs," said tariffs having an effective date six months from the date of filing.[5] With respect to these tariffs, Section 1307(f)(3) imposes the following requirement on such companies:

> Within 60 days following the end of such 12–month period as the commission shall designate, each natural gas distribution company subject to this subsection shall file with the commission a statement which specifies for such period:
>
> (i) The total revenues received pursuant to this section.
>
> (ii) The total natural gas costs incurred.
>
> (iii) The difference between the amounts specified by subparagraphs (i) and (ii).

---

**4.** Our scope of review of the Commission's decision is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings and conclusions of law were supported by substantial evidence. *The Vertis Group, Inc. v. Pennsylvania Public Utility Commission,* 840 A.2d 390 (Pa.Cmwlth. 2003), *petitions for allowance of appeal denied,* —— Pa. ——, 859 A.2d 770 (2004). Moreover, a court should not substitute its judgment for that of the Commission when

substantial evidence supports the Commission's decision on a matter within the Commission's expertise. *Popowsky v. Pennsylvania Public Utility,* 550 Pa. 449, 706 A.2d 1197 (1997). Further, an administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous. *Id.*

**5.** As noted above, UGI filed its tariffs on or about June 1 of each year.

(iv) How actual natural gas costs incurred differ from the natural gas costs allowed under paragraph (2) and why such differences occurred.

(v) How these natural gas costs are consistent with a least cost procurement policy as required by section 1318 (relating to determination of just and reasonable gas cost rates).

66 Pa.C.S. § 1307(f)(3).

The Commission is thereafter required to hold a public hearing on the substance of this statement described above. *See* Section 1307(f)(4) of the Code. After hearing, the Commission is required to determine "the portion of the company's natural gas distribution actual natural gas costs in the previous 12–month period" and thereafter issue an order either directing said company to refund to its customers revenues collected which exceeded the amount of actual natural gas costs incurred or to recover from its customers any amount by which said costs incurred exceeded the revenues collected.[6] *See* Section 1307(f)(5) of the Code. These Sections establish that the review and reconciliation of gas costs and revenues as well as the corresponding refunds/recoveries with interest must be examined utilizing a twelve-month period designated by the Commission.

The Commission designated such twelve-month period in its regulations. Specifically, the Commission's regulations provide that "thirty days prior to the filing of a tariff reflecting increases or decreases

in purchased gas expenses, gas utilities under 66 Pa.C.S. § 1307(f) recovering expenses under that section shall file a statement for the 12–month period ending 2 months prior to the filing date under 66 Pa.C.S. § 1307(f) as published in accordance with subsection (b). . . ." 52 Pa.Code § 53.64(i)(1).

As we stated above, the Commission's expertise in interpreting its own statute and regulations is entitled to great deference and will only be reversed if it is clearly erroneous. *See Popowsky; see also United States Steel Corporation v. Pennsylvania Public Utility Commission,* 850 A.2d 783 (Pa.Cmwlth.2004).[7] As UGI utilized a filing date of June 1 of each year with respect to its annual filing under Section 1307(f) of the Code, the twelve-month period ending two months prior would fall between April and March. In this case, the twelve-month period, or the so-called historic year, would run from April 1, 2002, to March 31, 2003. We cannot say that the Commission's conclusion in this regard was in error, let alone clearly erroneous.[8]

■ Next, UGI argues that the Commission's retroactive application of its new statutory interpretation regarding the use of historic data was arbitrary and capricious and constituted an abuse of administrative discretion. Again, we disagree.

Citing to the notion of fundamental fairness, UGI contends that the Commission's application of this new interpretation

---

6. As noted above, refunds to customers are to be made with interest at the rate of 8%, whereas recoveries from customers are permitted with interest at the rate of 6%.

7. Moreover, the fact that there may be more than one plausible interpretation does not require a reversal of the Commission's interpretation of a matter within its expertise. *United States Steel Corporation.*

8. UGI argues in its brief to this Court that the legislature's use of the words "annual purchased gas period" in the Commission's regulations at 52 Pa.Code § 53.64(i)(5)(ii) reference and require use of data from the PGC rate year running from December 1 to November 30, not use of historic year data. However, as the Commission notes in its brief to this Court, the regulation cited by UGI deals with quarterly filings, and not the annual filing at issue in this case.

should, at the least, only be applied in its next PGC proceeding. However, UGI seeks this prospective application merely to minimize its over-collection of costs and subsequent refunds to its ratepayers. In its brief to this Court, UGI admits that it had no notice or opportunity to reflect a change in the Commission's interpretation such that it could "minimize its overcollection position at March 31, 2003 through quarterly or interim filings." (Brief of UGI at 29).

Moreover, at the hearing before the ALJ, the ability of UGI to minimize this position was underscored by the surrebuttal testimony of Mr. O'Donnell. In this testimony, Mr. O'Donnell indicated that had UGI been able to utilize the thirteen-month period from December of 2002 to November of 2003 to calculate its over/under collections, it would have resulted in a net under-collection to be recouped from its ratepayers, whereas we indicated above that utilizing the historic year data results in a net over-collection and refund to its ratepayers.

Mr. O'Donnell further testified as to amendments to the Code in 1999 which, for the first time, permitted utilities to charge interest to ratepayers on net under-collections of costs. Mr. O'Donnell noted that this case represented the first time since the 1999 amendments that the determination of which data to use, historical versus PGC rate year, actually impacted upon a rate determination. Mr. O'Donnell also noted that the Commission's actions in this case are consistent with both the Code and the Commission's regulations. Thus, we cannot say that the Commission's application of its interpretation of Section 1307(f) and its accompanying regulations was arbitrary or capricious, nor can we say that it constituted an abuse of administrative discretion.

■ Next, UGI argues that the Commission erred in adopting a seven-month weighting factor in calculating interest on the difference between actual and estimated over/under collections. Again, we disagree.

Once more, this issue was addressed by Mr. O'Donnell in his surrebuttal testimony. Specifically, Mr. O'Donnell testified that UGI's attempted use of a nineteen-month weighting factor was in error and that all other Section 1307(f) companies were using a seven-month weighting factor in calculating interest on this difference. The Commission accepted this testimony as credible. Because the Commission is the ultimate finder of fact and makes all determinations as to the weight and credibility of evidence, we cannot say that the Commission erred in adopting a seven-month weighting factor. See *PP&L Industrial Customer Alliance v. Pennsylvania Public Utility Commission*, 780 A.2d 773 (Pa. Cmwlth.2001); *Borough of Duncannon v. Pennsylvania Public Utility Commission*, 713 A.2d 737 (Pa.Cmwlth.1998).

Finally, UGI argues that the Commission erred by considering UGI's July 30, 2003, interim PGC filing during the course of its 2003 PGC rate filing. Once more, we disagree.

■ UGI contends that pursuant to the Commission's own regulations, this filing, which it characterizes as a quarterly filing, should not even have been considered by the Commission until its next annual PGC filing, in June of 2004. See 52 Pa.Code § 53.64(i)(5)(iv). However, UGI mischaracterizes this filing as a quarterly filing. The Commission's regulations provide that quarterly filings are to be made according to a set schedule, i.e., "3 months, 6 months, 9 months and 12 months after the effective date of the Section 1307(f) tariff." 52 Pa. Code § 53.64(i)(5)(i). UGI's annual effective tariff date in this case is December 1

of each year, which would cause the quarterly filings to be made on March 1, June 1, September 1 and December 1 of each year. The interim filing in this case was made on July 30, 2003, and, hence, does not comply with the schedule set forth in the Commission's regulations.

■ UGI further contends that the Commission violated its right to due process as it did not have sufficient time to respond to OTS' argument on this issue as it only received notice of OTS' objection to its interim filing four calendar days and two business days before the Commission's hearings began. Nevertheless, UGI's contention in this regard fails to consider that the interim filing was submitted two months after the filing of its annual tariff and two weeks after OTS filed its direct testimony. Additionally, we note that OTS responded to UGI's interim filing within two weeks, in its surrebuttal testimony.[9] Hence, any problems with timing or its inability to prepare a proper response was brought about by UGI itself with the timing of its interim filing.[10]

### *ORDER*

AND NOW, this 8th day of December, 2004, the order of the Pennsylvania Public Utility Commission is hereby affirmed.

---

**9.** Further, we note that Section 332(c) of the Code, 66 Pa.C.S. § 332(c), provides each party with the right to submit rebuttal evidence and the Commission's regulations provide for the admissibility of all "relevant and material evidence...." 52 Pa.Code § 5.401(a).

**10.** Moreover, we note that this Court recently held that forty-two hours was a sufficient notice period to afford a party due process. *See ARIPPA v. Pennsylvania Public Utility Commission,* 792 A.2d 636 (Pa.Cmwlth.2002), *petitions for allowance of appeal denied,* 572 Pa. 736, 737, 815 A.2d 634, 635 (2003).