IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanya J. McCloskey,                  :
Acting Consumer Advocate,            :
            Petitioner            :
                                         :
                v.                   :
                                         :
Pennsylvania Public Utility          :
Commission,                          :   No. 1023 C.D. 2014
            Respondent            :   Argued:  June 17, 2015

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                   FILED:  December 18, 2015

       Tanya J. McCloskey, Acting Consumer Advocate from the Office of Consumer Advocate (OCA/Petitioner) petitions for review of the Opinion and Order of the Pennsylvania Public Utility Commission[1] (Commission/PUC) entered

---

[1] Specifically, the Commission ordered:

> 1. That PPL Electric Utilities Corporation's proposed Storm Damage Expense Rider is approved subject to the modifications outlined in this Order.
> 2. That the rates, rules and regulations proposed in Supplement No. 130 to Tariff Electric-Pa. P.U.C. No. 201 are rejected, and will not be placed into effect.
> 3. That PPL Electric Utilities Corporation shall file a tariff supplement with its initial Storm Damage Expense Rider, as approved and modified by this Order, with 60 days' notice to be effective January 1, 2015.  Subsequent annual and interim changes

**(Footnote continued on next page…)**

on April 3, 2014, that approved a storm damage expense rider (SDER) proposed by PPL Electric Utilities Corporation (PPL).[2]

## I. Procedural History

On March 20, 2012, PPL filed a base rate case[3] with the Commission and sought a $104.6 million rate increase. Definitive Brief for Respondent Pennsylvania Public Utility Commission (Commission's Brief) at 4. PPL included in proposed rates "a claim for storm damage expense within which it included recovery of storm damage insurance PPL purchased from an affiliate."[4] Commission's Brief at 4. The Bureau of Investigation and Enforcement (BIE) recommended disallowance of the PPL storm damage insurance claim and argued "that it was neither prudent nor beneficial to ratepayers because its premium and deductible were too high given the coverage provided."[5] Commission's Brief at 4. Morrissey recommended "recalculating an annual budget amount to reflect a five

---

**(continued…)**

> to the Storm Damage Expense Rider may be filed within 30 days' notice.
> . . . .

PUC's Opinion and Order, April 3, 2014, at 31; The Office of Consumer Advocate's Attachments A-K, Appendix A.

[2] PPL submitted a brief as Intervenor to this Court supporting the Commission's order. PP&L Industrial Customer Alliance (PPLICA) submitted briefs to this Court opposing the Commission's Order.

[3] Supplement No. 118 to Tariff.

[4] The base rate case included storm damage expense claims of $47,995,000; $12,625,000 for normal future test year storm damage, $8,750,000 for storm damage insurance, and $5,324,000 per year for five years that reflected damage caused by Hurricane Irene and the Halloween Snowstorm of 2011.

[5] The BIE recommendation was based on that "ratepayers have been responsible for amounts that exceeded actual storm costs over the historical preceding five years." Direct Testimony of Dorothy Morrissey (Morrissey), Fixed Financial Analyst for the BIE, submitted June 22, 2012, at 39; Reproduced Record (R.R.) at 26a.

year average of storm expenses to account for yearly fluctuations in storm expenses . . . [t]o avoid financial statement impact for year to year fluctuations, a reconcilable storm reserve account would provide an alternative solution." Direct Testimony of Morrissey, submitted June 22, 2012, at 32-33; R.R. at 19a-20a.

> In rebuttal, Joseph M. Kleha (Kleha) for PPL, stated:
>
> However, Ms. Morrissey did not provide sufficient details regarding possible storm damage expense rider or make a specific proposal that can be evaluated in this proceeding. There is simply not sufficient time in this proceeding to address the many details of a storm damage expense rider that would have to be resolved before such a rider could be implemented. Moreover, it is not necessary, at this time, to address such a rider because her proposed approach to storm damage expense is in error both factually and as a matter of public policy, as explained by Mr. Novatnack and Mr. Banzhoff. Nevertheless, PPL Electric is willing to consider such a rider in an appropriate future proceeding.

Rebuttal Testimony of Joseph M. Kleha, submitted July 16, 2012, at 48; R.R. at 55a.

> In surrebuttal, Morrissey testified:
>
> As an alternative to disallowance of the 2012 storm insurance claim, I recommended the use of reserve accounting treatment for storm costs, which would result in PPL being self-insured strictly within the regulated organization. This would preserve any benefits of any excessive accumulated storm reserves and allow them to be passed onto ratepayers through mitigation of future rate increases or as a credit toward future major storm costs. It would also avoid an unfavorable impact on the Company's financial statement that could result from year-to-year fluctuations in actual storm costs.

Surrebuttal Testimony of Morrissey at 39; R.R. at 84a.[6]


<u>A. Administrative Law Judge Susan D. Colwell (ALJ Colwell) Recommended Decision.</u>

On October 19, 2012, ALJ Colwell issued a recommended decision and determined:

### c. Storm Damage Reserve Account

PPL Electric 'is not conceptually opposed to such a mechanism for recovery of storm damage costs' and had proposed it in the 2007 rate case. The settlement in that case, coupled with the opposition of the parties, resulted in the matter being dropped. However, the company objects to the grant of this proposal without the details. PPL Electric MB at 70.

The insurance proposal was approved in 2007, and sufficient time has elapsed to find that it is not being used to the benefit of the ratepayers. <u>PPL Electric should be directed to develop a plan for establishment of a storm damage reserve account and to submit for approval.</u> If approved, it should be implemented when the insurance coverage provided by its present provider expires. <u>It is recommended that the public advocates be included in the development of this program.</u>   (Emphasis added.)

### d. Amortization
. . . .
The Company is entitled to recover its prudently incurred expenses, and the amounts are not in question. <u>Therefore, the 2012 budget amount and the five-year amortization of the 2011 storm damage costs in excess of insurance are approved.</u>

---

[6] At evidentiary hearings, in addition to PPL and BIE, OCA, the Office of Small Business Advocate (OSBA) and PPLICA were present during the base rate litigation.

4

. . . .
**VI. Order**

. . . .

8. That PPL Electric Utilities Corporation shall develop and submit for approval a plan for establishment of a storm damage reserve account and shall serve its proposed plan on the parties to this docket within three months of the entry of the final Commission Order in this docket. (Emphasis added.)

ALJ Colwell's Recommended Decision, October 19, 2012, at 38-40 and 142; OCA's Attachments, Appendix B.

B. Exceptions To ALJ Colwel's Recommended Decision.

On November 8, 2012, PPL alleged:

. . . However, as a result of Hurricane Sandy, the worst storm in the history of PPL Electric, it is now apparent that PPL Electric will not be able to obtain storm damage insurance on reasonable terms after its current policy expires on December 31, 2012. The issue of retaining storm damage insurance is moot. As a result, PPL Electric proposes that the Commission adopt PPL Electric's revised storm damage expense. Specifically, the revised expense claimed by PPL Electric should be approved as a reasonable estimate of ongoing normal storm damage expense, and PPL Electric should be directed to file a proposed storm damage reserve/tracker mechanism with the Commission as soon as possible after a final order is entered in this proceeding. (Emphasis added.)

. . . .

[In conclusion of the mootness of continued storm damage insurance] . . . PPL proposes the following: (1) that the Commission approve a normal expense claim of $17,875,000 plus $5,324,000 for an amortization of the extraordinary losses in 2011 and (2) that PPL Electric will file for a storm damage automatic adjustment clause

5

as soon as practicable after the Commission's final order in this proceeding. (Emphasis added.)

. . . .

Based on the foregoing, PPL Electric proposes a total storm damage expense of $23.199 million, including $17.875 million for normal storm losses and $5.324 million for amortization of extraordinary losses in excess of insurance coverage in 2011.

Exceptions of PPL Electric Utilities Corporation, November 8, 2012, at 2, 21, and 26; R.R. at 280a, 284a, and 289a.[7]

### C. Commission's Opinion And Order, December 28, 2012.

On December 28, 2012, the Commission issued its decision:

Based upon our review of the record and the Parties' Exception and Replies to this issue, we agree with the ALJ's recommendation to adopt I&E [BIE] proposal for PPL to propose a Storm Damage Expense Rider for Commission review . . . . The issues to be discussed between PPL and the public advocates shall include, but not be limited to, the following: (1) provisions for interest on under and over collections; (2) timing of reconciliation; (3) reporting of storm damage expenses and revenue for their recovery; (4) methods for adjusting the annual level of the expense in rates; and (5) exact categories of storm damage expense that would be subject to the reconciliation.

Additionally, we approve I&E's [BIE's] recommendation, and so direct, that PPL file a rider for storm damage expense recovery within ninety days of the date of entry of this Opinion and Order. PPL has stated

---

[7] PPL submitted revised figures: $3,175,000 for annual non-reportable storm damage, $9,450,000 for annual reportable storm damage expenses, $5,250,000 for the operating expense portion of annual storm damage no longer covered by insurance and $5,324,000 for the first year's amortization of the 2011 extraordinary storm expenses (totaling $23,199,000).

6

its intention to file as soon as practicable after the Commission's entry of a final decision in this proceeding.

Recovery of PPL's revised FTY [future test year] storm damage expenses of $23.199 Million shall be through base rates. <u>Any recovery through a Storm Damage Rider shall be permitted only to the extent that such expense exceeds the amount included within base rates</u>. (Emphasis added.)

Commission's Opinion and Order, December 28, 2012, at 37-38; OCA's Attachments, Appendix C.

### D. OCA's Petition For Reconsideration Or Clarification Of The PUC's December 28, 2012, Order.

On January 14, 2013, OCA petitioned for reconsideration and/or clarification of the Commission's December 28, 2012, order and asserted:

The record evidence also establishes that neither PPL nor I&E [BIE] took specific exception to ALJ Colwell's recommendation for consideration of a storm reserve account, although, admittedly, both parties used the terms 'reserve account', 'tracker' and 'rider' interchangeably at various places in their submitted documents. Accordingly, <u>the OCA submits that the discussions to take place between PPL and the statutory advocates as to storm damage expense recovery mechanisms should not be limited to only the creation of the rider, but should also include consideration of a storm reserve account</u>. (Emphasis added.)

The OCA submits that the Commission's Order, as discussed herein, should be clarified or reconsidered given the ALJ's recommendation. The OCA respectfully requests the Commission to include ALJ Colwell's

7

recommendations as they relate to the creation of a storm damage reserve account in the collaborative discussions.

Petition of the Office of Consumer Advocate for Reconsideration or Clarification, January 14, 2013, at 5; R.R. at 310a.

E. Commission's Opinion And Order, February 28, 2013.

On February 28, 2013, the Commission granted OCA's Petition for Reconsideration or Clarification:

> We find that the OCA has satisfied the Duick [v. Pennsylvania Gas and Water Company, 1982 Pa. PUC Lexis 4, *12-13] standards in that clarification of the storm damage expense collaborative is needed for the Company to comply with our December 12 Order. Moreover, we are in agreement with the OCA and I&E [BIE] that this collaborative [sic] should include consideration of both a storm damage expense rider as well as a storm damage reserve account as funding mechanisms. We further agree with the OCA's contention that any discussion of a mechanism for recovery of storm damage expenses should include all alternatives that had been developed in the record. (Emphasis added.)

Commission's Opinion and Order, February 28, 2013, at 8; OCA's Attachments, Appendix D.

On March 6, 2013, PPL initiated the storm damage expense collaborative discussions pursuant to the Commission's order with BIE, OCA, and OSBA via telephone conference calls.[8] The parties failed to reach a consensus and as a result on March 28, 2013, PPL filed Supplement No. 130 to Tariff Electric,

---

[8] Two other conference calls were conducted on March 15 and March 27, 2013.

8

proposing a SDER.[9]  Comments of the Office of Consumer Advocate, April 18, 2013, at 5; R.R. at 390a.

On April 5, 2013, the Commission issued a secretarial letter for PPL's filing of a proposed SDER. The letter established a comment and reply period for the proposed SDER. OCA and PPLICA filed comments on April, 18, 2013, urging the rejection of the proposed SDER. Reply comments were filed on May 6, 2013.

F. Commission's Opinion And Order, November 15, 2013.

On November 15, 2013, the Commission determined:

All parties shall be afforded due process when property interest such as those at issue here are implicated; however the required level of due process must be determined.  As the Commonwealth Court has held, 'when there are no disputed questions of fact and the issue to be decided is purely one of law or policy, a case may be disposed of without resort to an evidentiary hearing.' [Dee Dee Cab, Inc. v. Pennsylvania Public Utility Commission, 817 A.2d 593, 598 (Pa. Cmwlth. 1995)].  Rather, in such cases a 'paper hearing' is sufficient to protect the rights of the participants. [Diamond Energy, Inc. v. Pennsylvania Public Utility Commission, 653 A.2d 1360, 1367 (Pa. Cmwlth. 1995)]. (Emphasis added.)

In reviewing the parties' various Comments and Replies to Comments, the Commission has determined that the issues to be resolved are purely questions of law and policy that, as set forth above, do not require an evidentiary hearing.  Further, the procedural history . . . shows that the parties have already been given an

_____

[9] Included within the proposed SDER was a placeholder for recovery of extraordinary storm damage expense from Hurricane Sandy.  SDER at 19Z.21; R.R. 321a.

9

> opportunity to be heard, both before an ALJ, and through the allowance of the filing of Comments and Reply Comments. (Emphasis added.)

Commission's Opinion and Order, November 15, 2013, at 4-5; OCA's Attachments, Appendix F.

On December 16, 2013, OCA, PPL, BIE, and PPLICA submitted comments. On December 31, 2013, OCA, PPL, I&E, OSBA, and PPLICA submitted reply comments. "OCA continued to argue that the proposed SDER was contrary to sound ratemaking principles and public policy, and inconsistent with the Public Utility Code." Brief of OCA at 14.

### G. Commission's Opinion And Order, April 3, 2014.

On April 3, 2014, the Commission determined:

> Based on the analysis of PPL's proposal, filed public comments and applicable law, the Commission finds that the proposed SDER shall be approved subject to modifications outlined in this Order. Balancing potential benefits that may accrue from the SDER against any potential negative effects we find that the implementation of a SDER is in the public interest and that the SDER, as modified, complies with the requirements of 66 Pa. C.S. Section 1307 and the just and reasonable mandate of 66 Pa. C.S. Section 1301.

Commissions Opinion and Order, April 3, 2014, at 30-31; OCA's Attachments, Appendix A.

10

On April 18, 2014, PPL submitted a Petition for Reconsideration and Clarification of the April 3, 2014, order. On May 22, 2014, the Commission denied the petition.[10]

## II. OCA's Petition For Review

On June 20, 2014, OCA appealed the Commission's April 3, 2014, order and alleged:

16. On April 3, 2014, the Commission entered an Order approving PPL's SDER in all major respects. The April 3, 2014 Order also authorized PPL to include extraordinary storm expenses for Hurricane Sandy within the SDER, even though PPL has yet to provide any actual total damage amounts from the storm or underlying data supporting damage amounts . . . . (Emphasis added.)

17. PPL's SDER is not consistent with Section 1307 of the Public Utility Code and applicable case law, in that it would enable the Company to collect increases in an operating expense that has been claimed in base rate cases for decades. According to well-established and fundamental ratemaking principles in Pennsylvania, increases in normal storm damage expenses are not abnormal, nonrecurring or extraordinary and should remain a base rate expense. Expense surcharges such as the SDER would constitute single issue ratemaking and would effectively disassemble the traditional ratemaking process, contrary to the appellate cases interpreting the Public Utility Code in this area . . . . (Emphasis added.)
. . . .
19. . . . .
a. The Commission committed an error of law by authorizing PPL to implement the SDER, as such surcharge is inconsistent with the statutory requirements

---

[10] "PPL submitted this Petition in an attempt to expand the total amount of revenues that could be collected through the SDER." OCA Brief at 14.

11

for an automatic adjustment mechanism under Section 1307(a) of the . . . Code and inconsistent with the controlling case law in this area . . . .

b. The Commission committed an error of law by authorizing PPL to collect both normal ongoing storm damage and extraordinary storm damage expenses through the SDER . . . .   (Citations omitted and emphasis added.)

c. The Commission's Order is not supported by substantial evidence as to the recovery of Hurricane Sandy expenses, contrary to Section 704 of the Administrative Law and Procedure Act.  2 Pa. C.S. § 704.  (Emphasis added.)

d. The Commission committed an error of law by authorizing the collection of Hurricane Sandy expenses through SDER in violation of the statutory requirements of Section 1301 of the . . . Code that all rates be just and reasonable.  66 Pa. C.S. § 1301.

e. The Commission committed an error of law by failing to provide sufficient due process by providing the parties with only a 'paper hearing' process when factual issues were in dispute . . . .[11]

Petition for Review, June 20, 2014, Paragraphs 16-17 and 19 at 8-11.

**III. Pennsylvania Public Utility Commission's Motion To Dismiss In Part[12]**

On January 12, 2015, the Commission sought to dismiss in part OCA's substantial evidence and due process arguments concerning Hurricane Sandy expenses.   Essentially, the Commission asserts:

[11] PPL, OSBA, PPLICA all filed notices of intervention.

[12] The Commission's Motion to Dismiss in Part was listed with the merits before this Court sitting en banc.

12

28. The proceedings . . . demonstrate that the Commission has provided all Parties with adequate due process to address how the SDER is to handle Hurricane Sandy expenses. The OCA and PPLICA utilized that due process to request that the Commission terminate the proceeding and allow SDER rates to go into effect; neither the OCA nor PPLICA can maintain the argument they were denied due process . . . . (Emphasis added.)

29. The Commission respectfully submits that issues relating to Hurricane Sandy expenses are now moot or waived by the Parties voluntary conduct before the Commission and the Parties' agreement to permit SDER to go into effect and to contain Hurricane Sandy expenses . . . . (Emphasis added.)

30. The Commission also respectfully submits that the doctrine of judicial estoppel[13] prohibits the OCA and PPLICA from continuing to litigate these same issues in the instant appeal. The positions taken by the OCA and PPLICA before this Court are inherently inconsistent with their successfully maintained position below-that the SDER should take effect and should include Hurricane Sandy expenses . . . . (Emphasis added.)
. . . .
33. The Commission respectfully requests that this Court grant it relief from continued litigation concerning whether: 1) substantial evidence supports the recovery of Hurricane Sandy expenses; 2) the Commission committed error of law by authorizing the recovery of Hurricane Sandy expenses through the SDER; and 3)

---

[13] In Marazas v. Workers' Compensation Appeal Board (Vitas Healthcare Corporation), 97 A.3d 854 (Pa. Cmwlth. 2014), this Court determined that "[a]ccordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was 'successfully maintained in that action.' Id. at 859, quoting Black v. Labor Ready, Inc., 995 A.2d 875, 878 (Pa. Super. 2010).

13

factual issues remained in dispute regarding Hurricane Sandy expenses as a rate component in the approved PPL Storm Damage Expense Rider.

Pennsylvania Public Utility Commission Motion to Dismiss in Part, January 12, 2015, Paragraphs 28-30 and 33 at 9-11.

In response, OCA states:

A. <u>Introduction</u>.

<u>The PUC [Commission] Motion bases all of its allegations and proposed conclusions as to the continued viability of the OCA's appeal before this Court on the limited Compliance Filing proceeding</u> . . . . (Emphasis added.)

B. <u>The Compliance Filing Proceeding</u>.
. . . .
. . . <u>The ALJ properly recognized the scope of the Compliance Filing proceeding as being narrow</u>, not only for the obvious reason that compliance filings by their very nature are <u>focused on data and calculations</u>, but also fully recognizing that the merits of this matter were on appeal to this Court . . . . (Emphasis added.)

. . . The PUC's [Commission's] attempt to portray the Compliance Filing Proceeding as a far-reaching opportunity for an in-debt prudence review is misplaced, unsupported by the record and at odds with the determinations of its own ALJ.

C. <u>The PUC's [Commission's] Judicial Argument Is Without Merit</u>.
. . . .
The OCA's position in the Compliance Filing proceeding is not inconsistent with its position before this Court - the two matters deal with different issues. As explained in this Answer, the Compliance Filing proceeding consisted

14

of verifying that PPL had complied in all respects with the PUC's [Commission's] April 3, 2014 Order by submitting expense data and then by mathematically creating an initial rate for the SDER based on the numbers provided. Whether the SDER is a legal construct under the law, or whether the design elements of the SDER, including all extraordinary storm damage, expensing all extraordinary storm damage over three years, providing the parties with an extremely limited time frame in which to perform a 'prudence' [sic] review and other design and implementation features of the SDER were not before ALJ Colwell. Those issues, and others, are properly before this Court. (Emphasis added.)

. . . .

D. The OCA's Substantial Evidence Arguments Have Not Been Waived.

. . . .

. . . The OCA's appeal in this matter as to lack of substantial evidence focuses on the fact that the PUC [Commission] approved the recovery of all extraordinary storm damage expense on a going forward basis, in full, over a period of three years with no further review as to whether such a brief amortization period was reasonable . . . . The discussion as to Hurricane Sandy in this appeal process tends to show the level of examination that is needed to thoroughly evaluate such expenses, yet will never occur under a Section 1307(a) mechanism. (Emphasis added and footnote omitted.)

E. The OCA's Error of Law Arguments Have Neither Been Waived Nor Have They Become Moot As A Result Of The Compliance Filing Proceeding.

. . . .

The OCA presented two separate arguments to this Court as to errors of law committed by the PUC [Commission] below, and neither of those arguments have been diminished or otherwise made moot by the limited Compliance Filing proceeding. (Emphasis added.)

. . . .

15

. . . The PUC's [Commission's] attempt to carve out one small subset of the issues before this Court, Hurricane Sandy expenses, and thereby have the Court dismiss the majority of the OCA's arguments in this matter should be disregarded.

F. The OCA's Due Process Challenge Has Not Been Waived.
. . . .
. . . [H]ad a full and complete record been created before the PUC [Commission] through evidentiary proceedings, rather than the submission of comments, the OCA would have introduced evidence to rebut PPL's claimed lack of any control over storm damage expense, among other evidentiary showings that could have been possible. Once the April 3, 2014 Order was issued, however, the due process deprivation became uniquely permanent. (Emphasis added.)

Answer of Petitioner Tanya J. McCloskey, Acting Consumer Advocate, April 8, 2015, Paragraphs A-F at 6, 10-14, and 16-17.

**IV. This Court's Ruling On The Commission's Motion To Dismiss**

A review of the record persuades this Court to deny the Commission's motion to dismiss in part OCA's following issues: 1) whether substantial evidence supports the recovery of Hurricane Sandy expenses; 2) whether the Commission committed an error of law by authorizing the recovery of Hurricane Sandy expenses; and 3) whether the Commission failed to provide the OCA with sufficient due process based on waiver and mootness. As OCA astutely noted, "necessary facts and evidence to support a conclusion that all storm damage expense is 'substantial, variable and beyond the utility's control' . . . were not going to be adduced in the Compliance Filing proceeding as such issues were

16

beyond the scope of that proceeding." Answer of Acting Consumer Advocate at 17.

## V. Issues

#### 1. <u>Did The Commission Commit An Error Of Law Or Abuse Its Discretion When It Authorized PPL To Implement The Recovery Of Normal, Ordinary Storm Damage Expenses Pursuant To 66 Pa. C.S. § 1307(a)</u>?

Initially, OCA contends[14] that the SDER is impermissible single-issue ratemaking which is inconsistent with the controlling case law. According to OCA, the automatic adjustment mechanisms under Section 1307(a) of the "Public Utility Code" (Code), 66 Pa. C.S. § 1307(a), are only to be used in limited circumstances and for unique situations. <u>Popowsky v. Pennsylvania Public Utilities Commission</u>, 869 A.2d 1144, 1160 (Pa. Cmwlth. 2005); and <u>Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utilities Commission</u>, 653 A.2d 1336, 1349 (Pa. Cmwlth. 1995). A surcharge[15] recovery under 1307(a) of the Code, 66 Pa. C.S. §

---

[14] This Court's review of a Commission's order is to determine whether the Commission's findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. <u>Popowsky v. Pennsylvania Public Utility Commission</u>, 910 A.2d 38 (Pa. 2006). The standard of review to be applied when reviewing the Commission's decision is that the Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision on a matter within the Commission's expertise. <u>City of Lancaster (Water) v. Pennsylvania Public Utility Commission</u>, 769 A.2d 567 (Pa. Cmwlth. 2001) citing <u>Popowsky v. Pennsylvania Public Utility Commission</u>, 706 A.2d 1197, 1201 (Pa. 1997). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. <u>Borough of East McKeesport v. Special/Temporary Civil Service Commission</u>, 942 A.2d 274, 281 (Pa. Cmwlth. 2008).

[15] This Court has previously stated:

> A surcharge is an amount added to a customer's regular bill that is established outside the normal ratemaking procedure. The surcharge is imposed pursuant to an 'automatic adjustment clause' in a utility's approved tariff. The surcharge allows the add-on of expenses and changes to those expenses without including any

**(Footnote continued on next page…)**

17

1307(a), is only permissible where expressly authorized by the General Assembly or where an expense is easily identifiable and beyond the utility's control. Popowsky v. Pennsylvania Public Utility Commission (Newtown), 13 A.3d 583, 591 (Pa. Cmwlth. 2011). OCA concludes that the allowance of a surcharge recovery for things that are beyond the utility's control occurs only when the "mathematical" review performed under Section 1307(a) is inadequate to determine whether a surcharge is "just or reasonable."[16] Id.

The Commission responds that the amount of storm damage to PPL's infrastructure is beyond the control of PPL. Storm damage expenses may occur "at any future time" at nature's "sole discretion" as to scale, and "without notice" of any kind. Brief of the Commission at 41. The Commission argues that a surcharge was "necessary and appropriate" for PPL to restore power to its customers after a storm for public safety reasons and for compliance with Section 1501 of the Code, 66 Pa. C.S. § 1501. Brief of Commission at 43. The Commission claims OCA failed to consider that the costs of having a surcharge are less than the expenses incurred from extended power outages.

Section 1307 of the Code, 66 Pa. C.S. § 1307, provides:

---

**(continued…)**

> profit or other recovery; this add-on is known as 'dollar for dollar'
> recovery.

Popowsky v. Public Utility Commission, 869 A.2d 1144, 1152 (Pa. Cmwlth. 2005), appeal denied, 895 A.2d 552 (Pa. 2006).

[16] OCA also argues the SDER is impermissible because the amount of storm damage is not beyond PPL's control. OCA stresses that PPL can mitigate storm damage with its pre-storm maintenance and planning activities and that it has control over the post-storm activities and the resources used to repair storm damage. OCA argues the storm expenses cannot be subjected to a mathematical review because the expenses are controlled by the utility.

18

**(a) General rule.-**Any public utility . . . may establish a sliding scale of rates or such other method for the automatic adjustment of the rates of the public utility as shall provide a just and reasonable return on the rate base of such public utility, to be determined upon such equitable or reasonable basis as shall provide such fair return. A tariff showing the scale of rates under such arrangement shall first be filed with the commission, and such tariff, and each rate set out therein, approved by it. The commission may revoke its approval at any time and fix other rates for any such public utility if, after notice and hearing, the commission finds the existing rates unjust or unreasonable.

A reading of the plain language of Section 1307(a) of the Code in no way prohibits the recovery of storm damage expenses or any other expenses through the use of a surcharge. In <u>Popowsky v. Pennsylvania Public Utility Commission (Newton)</u>, 13 A.3d 583 (Pa. Cmwlth. 2011), this Court addressed the issue of whether the Commission had discretion to establish an automatic adjustment clause:

> Based on the foregoing cases, and keeping in mind that the PUC's interpretation of the Code will not be disturbed unless clearly erroneous [Popowsky v. Pennsylvania Public Utility Commission, 706 A.2d 1197 (Pa. 1997)] Popowsky 1997, . . . 706 A.2d at 1203, we find that the PUC has the authority under Section 1307(a) of the Code to allow NAWC [Newtown Artesian Water Company] to implement the PWAC [Purchased Water Adjustment Clause]. <u>While we recognize that a base rate filing under Section 1308 of the Code is the preferred method for a public utility to recover the costs of providing service, we cannot ignore the fact that the General Assembly envisioned the automatic adjustment of rates in enacting Section 1307(a) of the Code</u>.

19

> . . . The only statutory requirement contained in Section 1307(a) of the Code is that the surcharge 'provide a just and reasonable return on the rate base of [the] public utility, to be determined upon such equitable or reasonable basis as shall provide such fair return.' Masthope [Masthope Rapids Property Owners Council v. Public Utility Commission, 581 A.2d 994 (Pa. Cmwlth. 1990)] [Pennsylvania Industrial Energy Coalition v. Public Utility Commission, 653 A.2d 1336 (Pa. Cmwlth. 1995), affirmed 670 A.2d 1152 (Pa. 1996)] [PIEC], and [Popowsky v. Public Utility Commission, 869 A.2d 1144 (Pa. Cmwlth. 2005), appeal denied, 895 A.2d 552 (Pa. 2006)] Popowsky 2005 support the proposition that surcharge recovery is available under Section 1307(a) of the Code (1) where expressly authorized by the General Assembly, or (2) where an expense is easily identifiable and beyond the utility's control. The basis for this distinction lies with the PUC's review under Section 1307(a) of the Code . . . . (Emphasis in original and added.)

Popowsky (Newtown), 13 A.3d at 591.

In Masthope, this Court described the Commission's review under Section 1307(a) of the Code:

> [T]he Commission's review is appropriately characterized as preliminary and cursory. Indeed, the very function of the typical automatic adjustment clause is to permit rapid recovery of a specific, identifiable expense item, with a more comprehensive analysis upon reconciliation of actual costs and previously projected costs used to establish the effective rate. The initial process is essentially a mathematical review of the projections provided by the public utility. (Emphasis in original.)

Id. at 1000.

20

Here, the scale and scope of PPL's storm damage expense addressed by the SDER were well beyond its control. Pursuant to Popowsky 2011 and Masthope, the very function of an automatic adjustment clause is to permit the rapid recovery of a specific identifiable expense item. The Commission's April 4, 2014, order clarified its expectations concerning the discretionary surcharge dealing with storm damage expenses under Section 1307(a) of the Code, 66 Pa. C.S. § 1307(a). The Commission examined the proposed SDER and conditioned final approval for PPL's discretionary Section 1307 surcharge upon satisfaction of the following burden:

> 1) The surcharge recovers a legitimate rate component.
>
> 2) The expense in question is capable of degrading utility return on rate base to a significant degree.
>
> 3) The expense is capable of evading recovery in a prospective Section 1308 base rate proceeding.
>
> 4) The surcharge will not recover capital costs, i.e., it is a pure expense.
>
> 5) The expense is discrete and easily identified.
>
> 6) The expense is variable and beyond the utility's control.
>
> 7) The annual reconciliation procedure is adequate.
>
> 8) The surcharge will reset to $0 at each base rate proceeding or use other mechanisms to prevent double recovery.

Commission's Opinion and Order, April 3, 2014, at 19-20, OCA's Attachments, Appendix A.

Here, the Commission did not err or abuse its discretion when it determined that the automatic adjustment clause was proper in order for PPL to recover storm damage expenses.

Additionally, this Court rejects OCA's claim that the SDER constitutes impermissible retroactive or single-issue ratemaking. In PIEC, this Court stated:

> Single-issue ratemaking is similar to retroactive ratemaking and, in general, is prohibited if it impacts on a matter that is normally considered in a base rate case. This is, however, not a base rate case. No party has asked for a specific recovery of a line item that traditionally would be requested in a rate-making procedure. The PUC applied Section 1307's [of the Code] authorization to specifically allow an automatic adjustment of rates outside of the rate-making procedures. Because the surcharge is permitted under the Code, with procedures to determine the reasonableness of the charges outside of a base rate case, the doctrine of single-issue ratemaking is inapplicable. (Footnote omitted and emphasis added.)

PIEC, 653 A.2d at 1350. Pursuant to Popowsky (Newtown), this Court finds that the Commission had the authority under Section 1307(a) of the Code to allow PPL to implement the SDER and, as such, it did not "constitute impermissible single-issue ratemaking." Id. at 593.

2. Did The Commission's Order Violate 2 Pa. C.S. § 704 "Because The Specific Determinations As To The Approval Of An Automatic Adjustment Mechanism For Storm Damage Expense Recovery" Were Not Based On Substantial Evidence?

OCA next contends the Commission's ruling was not supported by sufficient evidence as required by 2 Pa. C.S. § 704 (Disposition of appeal), and that

22

PPL failed to meet its burden of proof showing the proposed rates are reasonable under Section 315(a) (Burden of proof) of the Code, 66 Pa. C.S. § 315(a). Specifically, OCA asserts that the information used by PPL in proposing the SDER was mere speculation about the occurrence of future events which lacked the actual damage figures caused by the extraordinary storms such as Hurricane Sandy. OCA further contends the Commission failed to show how the proposed SDER is "just and reasonable".

The Commission responds that this Court will accept the Commission's discretionary findings and conclusions unless they totally lack support and that this Court "may not indulge in the process of weighing evidence and resolving conflicts in testimony." Philadelphia Electric Company v. Pennsylvania Public Utility Commission, 502 A.2d 722, 731 (Pa. Cmwlth. 1985). The Commission continues that there is clear evidence in the record of the unavailability of commercial storm insurance and the need to immediately repair storm damage. Direct Testimony of Morrissey at 33; R.R. at 20a and Executive Summary at 1; R.R. 123a. The Commission concluded that there will be an additional proceeding where OCA is a party which will provide a forum to discuss expenses from "super" storm Sandy and other storms. Therefore, OCA's arguments are premature.

Section 315(a) of the Code, 66 Pa. C.S. § 315(a), provides in pertinent part that [i]n any . . . proceeding upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility." (Emphasis added.)

23

Here, the evidence of record supported the Commission's conclusion that future weather events and the cost incurred were beyond PPL's control. As the Commission noted:

> PPL's proposed SDER contemplates the recovery of reportable storm damage expense that exceeds the $14.7 million that is currently being recovered in base rates. Reportable storm damage expense that is recoverable under the SDER will include operations and maintenance expenses, excluding straight time wages and benefits, for damages caused by these storms. Capital costs and damage caused to transmission facilities will be excluded from recovery under the SDER. <u>The SDER will recover only actual incurred expense; no forecasted or projected expenses will be used</u>. (Emphasis added.)

Commission's Opinion and Order, April 3, 2014, at 27; OCA's Attachments, Appendix A.

The actual storm costs claimed by PPL under both the fixed and adjustable portions of the SDER will be examined in each base rate proceeding under Section 1308 of the Code, 66 Pa. C.S. § 1308. The SDER base rate "threshold will be adjusted up or down in each base rate case proceeding, as appropriate, and the SDER will be reset to zero (0)." Commission's Opinion and Order, April 3, 2014, at 27; OCA's Attachments, Appendix A. The burden will rest upon PPL to establish it prudently incurred the expenses collected through the SDER. If PPL fails to sustain its burden, ratepayers will experience rate decreases.

Additionally, OCA's assertion that the inclusion of Hurricane Sandy expenses in the SDER lacked record support because the storm damage was unknown and is premature. The Hurricane Sandy expense does not become

relevant until PPL seeks to claim those costs through the SDER. PPL submitted its claim to recover the cost associated with Hurricane Sandy after the Commission's April 3, 2014, order. Therefore, the OCA and other interested parties will have the opportunity to review and challenge these costs in future filings and proceedings.

Therefore, the Commission's approval of the SDER was supported by substantial evidence.[17] "Substantial evidence" is relevant evidence that a reasonable mind may accept as adequate to support its conclusion. This is more than a trace of evidence or the suspicion of the existence of such a fact sought to be established.[18] Norfolk & Western Railroad Co. v. Pennsylvania Public Utilities Commission, 413 A.2d 1037 (Pa. 1980); Murphy v. Department of Public Welfare, White Haven Center, 480 A.2d 382 (Pa. Cmwlth. 1984).

3. Did The Commission Fail To Provide Sufficient Due Process When It Only Provided The Parties With A Paper Hearing?

Last, OCA contends the Commission erred when it determined that there were no issues of fact in dispute and as such a paper hearing was sufficient to satisfy due process. OCA argues that there were issues of fact in dispute because PPL only submitted its proposed SDER after the conclusion of ALJ hearing which

---

[17] PPL stated in its brief that "the SDER was approved based on the comments submitted into the record after the conclusion of the 2012 rate case. The OCA does not dispute that these comments were submitted . . . or otherwise assert that it was precluded from submitting comments to the record." Definitive Brief for Intervenor PPL Electric Utilities Corporation at 48.

[18] Additionally, this Court is satisfied that the Commission did not violate Section 704 of the Administrative Law and Procedure, 2 Pa. C.S. § 704, which relevantly provides that "[a]fter hearing, the court shall affirm the adjudication unless it shall find that . . . that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence."

deprived OCA of the opportunity to cross-examine witnesses, conduct discovery or submit expert testimony. OCA states that it was denied due process.[19]

The Commission responds that OCA and PPLICA waived their rights to present evidence and testimony. The Commission's October 31, 2013, Opinion and Order determined that any additional attempts to relitigate the appropriateness of an alternative funding mechanism to replace the disallowed storm damage insurance will be disregarded. OCA and PPLICA chose to remain silent and relied on the litigation efforts of BIE to raise issues of fact. Therefore, OCA and PPLICA cannot argue there was a denial of due process rights.

In Conestoga National Bank of Lancaster v. Patterson, 275 A.2d 6, 9 (Pa. 1971), our Pennsylvania Supreme Court stated that "[p]rocedural due process does not require notice and a hearing in every conceivable situation involving administrative action."

In Diamond Energy Inc. v. Pennsylvania Public Utility Commission, 653 A.2d 1360 (Pa. Cmwlth. 1995), this Court quoted our Pennsylvania Supreme Court:

> We do not believe, however, that due process requires that the [Pennsylvania Coal Mining] Association receive a full hearing before rates can become effective. While oral proceedings may be necessary for determinations likely to turn on witness credibility, written submissions may be adequate when economic or statistical questions are at issue. (Emphasis added.)

---

[19] The issues of fact OCA claims were in dispute were the storm damage amounts and whether those expenses were "just and fair." OCA stresses that these issues did not become material until after PPL filed its exceptions to the ALJ's recommended decision.

Diamond Energy, 653 A.2d at 1367, quoting Pennsylvania Coal Mining Association v. Pennsylvania Insurance Department, 370 A.2d 685, 693 (Pa. 1977).

In the present controversy, this Court agrees with PPL's assessment that OCA was not denied due process:

> In summary, the OCA's and PPLICA's due process arguments are misplaced. The Supreme Court has clearly concluded that the review process provide in Section 1307 does not violate due process rights [Allegheny Ludlum Steel Corp. v. Pennsylvania Public Utility Commission, 459 A.2d 1218, 1222 (Pa. 1983)]. Further, the OCA's and PPLICA's 'disputed material facts' are premature. Any factual issues regarding the amount of storm damage expenses that PPL incurred from storms and whether the expenses were just and reasonable do not arise unless and until PPL Electric submits a claim seeking to recover these costs and expenses through the SDER. Clearly, no such claims were submitted for approval in the SDER Order; rather, these claims were submitted for the first time in PPL Electric's preliminary tariff supplement and calculation of storm damage expenses filed on October 31, 2014. Finally, the OCA and PPLICA have numerous remedies at hand, and in fact have taken advantage of those remedies, to review the amount of storm damage expenses that PPL Electric incurred from storms and whether the expenses were just and reasonable. (Emphasis added.)

Brief for Intervenor PPL Electric at 55.

The Commission did not violate OCA's and PPLICA's due process rights.

27

Accordingly, this Court affirms the decision of the Commission.


_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanya J. McCloskey,                        :
Acting Consumer Advocate,                  :
                          Petitioner       :
                                           :
                    v.                     :
                                           :
Pennsylvania Public Utility                :
Commission,                                :    No. 1023 C.D. 2014
                          Respondent       :

## **O R D E R**

AND NOW, this 18th day of December, 2015, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed. Additionally, the Pennsylvania Public Utility Commission's Motion to Dismiss in Part is denied in its entirety.

_____
BERNARD L. McGINLEY, Judge

Tanya J. McCloskey,                          :
Acting Consumer Advocate,                    :
                    Petitioner               :
                                             :    No.  1023 C.D. 2014
            v.                               :
                                             :    Argued:  June 17, 2015
Pennsylvania Public Utility                  :
Commission,                                  :
                    Respondent               :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


**_OPINION NOT REPORTED_**

DISSENTING OPINION BY
JUDGE McCULLOUGH                              FILED:  December 18, 2015


            I respectfully dissent from the Majority's decision to affirm the order

of the Pennsylvania Public Utility Commission (Commission) approving the storm

damage expense rider (SDER) submitted by PPL Electric Utilities Corporation

(PPL).  I would conclude that the SDER is invalid as a matter of law because it

effectuates retroactive ratemaking.

            Notably, the Commission has already rejected a SDER surcharge

under section 1307(a) of the Public Utility Code (Code), 66 Pa.C.S. §1307(a),

because expenses incurred for storm damage are most appropriately handled through a base rate proceeding under section 1308 of the Code, 66 Pa.C.S. §1308.[1] *Pennsylvania Public Utility Commission v. Metropolitan Edison Company*, 2006 Pa. PUC LEXIS 116, **301-15 (Pa. PUC 2006, filed October 31, 2007), *aff'd* 2007 Pa. PUC Lexis 5, *273.

Consistent with this principle, PPL's storm damage expenses, although modified by the surcharge adjustments in the SDER, have their genesis in – and are currently subjected to – a base rate, particularly "a fixed $14.7 million in storm damage expenses for base rate recovery." (Commission's brief at 11.) According to the Commission's order:

---

[1] As this Court elucidated:

> A surcharge is an amount added to a customer's regular bill that is established outside the normal ratemaking procedure. The surcharge is imposed pursuant to an "automatic adjustment clause" in a utility's approved tariff. The surcharge allows the add-on of expenses and changes to those expenses, without including any profit or other recovery; this add-on is known as "dollar for dollar" recovery.
>
> The surcharge is quite different from a base rate. In Pennsylvania, as in most jurisdictions, rates for public utilities are set using what is known as the test year concept, which requires taking a snapshot of the utility's revenues, expenses and capital costs during a one-year period. The object of using a test year is to reflect typical conditions. Test year expenses may be adjusted or normalized where atypical or non-recurring. Under the test year concept, revenues, expenses and capital costs are to be simultaneously reviewed for the same period of time so that a utility may prove its new rates are "just and reasonable."

*Popowsky v. Pennsylvania Public Utility Commission*, 869 A.2d 1144, 1152 (Pa. Cmwlth. 2005) (citations omitted).

In future base rate proceedings, PPL must show that it is entitled to recover all SDER-eligible storm damage expenses (appropriately accounting for deferrals and amortizations) in base rates in accord with traditional rate setting techniques. That is, only prudent, known and measureable expenses can be recovered. With the setting of new base rates, the adjustable portion of the SDER rate . . . will reset at $0 as all valid storm damage expenses will be reflected in base rates – as is the traditional practice.

(*Id.* at 11-12.)

At its core, then, the surcharge adjustments in the SDER are incorporated into the base rate proceedings and this case is a "base rate case." Therefore, the rule against retroactive ratemaking applies, *see Popowsky v. Pennsylvania Public Utility Commission (Purchased Water Surcharge)*, 13 A.3d 583, 593 (Pa. Cmwlth. 2011), and the adjustments in the SDER cannot allow PPL to recover excess expenses, when compared to the $14.7 million base rate figure, or refund excess revenue.

It is well-settled that a utility that has failed to accurately project expenses and revenue in its base rate cannot effect an after-the-fact correction by rate increases when profits are lower than predicted or refunds to customers when profits are higher than predicted. *Popowsky v. Public Utility Commission*, 869 A.2d 1144, 1153 (Pa. Cmwlth. 2005). In other words, "the utility may not receive retroactive rate relief on account of expense items which are greater than anticipated" and the "Commission clearly may not establish rates which are calculated to retroactively . . . refund deficits created by inaccuracies in its prior rate authorizations." *Philadelphia Electric Co. v. Public Utility Commission*, 502 A.2d 722, 727 (Pa. Cmwlth. 1985). Conversely, "the Commission is without the power to order a regulated utility to refund to its ratepayers a particular item of

revenue in excess of that anticipated at the time of rate approval unless the utility's rates, considered as to the whole of their effect on the utility's revenues, are unreasonable or unjust." *Id.* These precepts have been described as the rule against retroactive ratemaking.

In probably the most elaborate language to date, our current President Judge has explained the prohibition of retroactive ratemaking as follows:

> Ratemaking, by its nature, is prospective. Typically, a utility files a general rate case with a record of revenues and expenses for the past year and a projection of anticipated expenses and revenues for a future test year. . . .
>
> Because of the prospective nature of rates, a rule against retroactive ratemaking has developed. The rule against retroactive ratemaking prohibits a public utility commission from setting future rates to allow a utility to recoup past losses or to refund to consumers excess utility profits. The policy reasons behind this rule are that if retroactive ratemaking is allowed, it makes the "test year" method of ratemaking meaningless and the general principle that those customers who use power should pay for its production rather than requiring future ratepayers to pay for past use.

*Popowsky v. Public Utility Commission*, 642 A.2d 648, 650-51 (Pa. Cmwlth. 1994) (citations omitted) ("*Popowsky I*").

In *Popowsky I*, this Court held that a utility may not recover, in a future base rate case, costs that were previously and incrementally incurred due to changes in accounting standards. Explaining that "the rule against retroactive ratemaking applies to the recovery of costs relating to prior periods," *id.* at 652, we determined that, because the utility's current and incremental costs would be recovered in a future rate case, the costs were prohibited by the rule against retroactive ratemaking.

Here, the Commission all but concedes in its brief that the SDER constitutes retroactive ratemaking. More specifically, by using a surcharge under section 1307 of the Code as the guise by which to alter the base rate, the Commission has permitted the SDER to serve as a supplemental mechanism for PPL to recoup expenses that are above and beyond the $14.7 million that it can recover. The SDER also permits PPL to provide customers with refunds in the event that revenue is over-anticipated. As the Commission attests in its brief:

> **Should PPL experience reportable storm damage in excess of the amount included in base rates, PPL may make monthly interim changes [*i.e.*, increases] to the adjustable SDER rate**. . . . Thus, the adjustable portion of the SDER provides a limited safety valve to reflect actual reportable and extraordinary storm damage incurred between [base] rate cases. The [Commission] points out that the adjustable portion of the SDER expressly excludes projections or forecasts; only known and measurable expenses may be included in the adjustable SDER rate. Conversely, **if PPL does not experience reportable storm damage, and the fixed amount of the SDER exceeds actual storm damage expenses, the annual SDER reconciliation will direct PPL to provide SDER credits to ratepayers.**

(Commission's brief at 12) (emphasis supplied).

In my view, the SDER clearly constitutes retroactive ratemaking. As framed by its terms and explained by the Commission, the SDER permits PPL to make monthly increases to its SDER surcharge rate in order to recoup previously incurred expenses. Otherwise, if storm damage expenses do not exceed the SDER surcharge, then PPL will refund (or provide credits to) the ratepayers for money they paid as part of their monthly SDER surcharge. In both instances, the rule against retroactive ratemaking is violated. *Popowsky I*, 642 A.2d at 650-51 ("The rule against retroactive ratemaking prohibits a public utility commission from

setting future rates to allow a utility to recoup past losses or to refund to consumers excess utility profits.").

If PPL wants to increase its base rate for storm damage expenses, it must do this prospectively at the next base rate proceeding. In the meantime, PPL cannot, under the authority of the SDER, intermittently increase its surcharge rates to effectuate a retroactive recovery because the base rate was later proven to be too "low." *See Popowsky I*, 642 A.2d at 652 ("Because the incremental costs recovered in some future rate case would relate to [previous] years up until the next rate case, what [the utility] requested and the [the Commission] awarded is retroactive ratemaking."). Without question, the functional purpose of the SDER is to ensure that, in the worst case scenario, PPL will be able to escalate its surcharge rate after a storm and collect more money from future ratepayers in order to compensate PPL for past expenses paid in connection with that storm. Consequently, the SDER is a prototypical example of retroactive ratemaking.

Because the Commission's approval of the SDER sanctions retroactive ratemaking, I would reverse the Commission's order approving the SDER. Accordingly, I respectfully dissent.

                                           _____

                                           PATRICIA A. McCULLOUGH, Judge

President Judge Pellegrini and Judge Cohn Jubelirer join in this dissent.